NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3234-12T3

RON MILLS, WILLIAM BAYLOCK,
DAWONE BAYLOCK, ANTHONY CENTENO,
DAVID JOHNSON, JHERELLE BAILEY
a/k/a KAMAL J. BAILEY,  BRYHEEM
FRAIZER, DERRICK BROWN, GILBERT
BECERRA,

    Plaintiffs,

and

DAYNA HINTON, ALBERT CASS,
ROBERT HENDERSON, ANTWYNE ROLAX,

    Plaintiffs-Respondents,

v.

STATE OF NEW JERSEY, DEPARTMENT
OF THE TREASURY,

    Defendant-Appellant.

_____

> **APPROVED FOR PUBLICATION**
>
> **March 13, 2014**
>
> **APPELLATE DIVISION**

        Argued October 17, 2013 — Decided March 13, 2014

        Before Judges Waugh, Nugent, and Accurso.

        On appeal from the Superior Court of New
        Jersey, Law Division, Camden County, Docket
        No. L-3321-11.

        Peter Slocum, Deputy Attorney General,
        argued the cause for appellant (John J.
        Hoffman, Acting Attorney General, attorney;
        Christopher S. Porrino and Melissa H. Raksa,

Assistant Attorneys General, of counsel; Mr. Slocum, on the brief).

Kenneth D. Aita argued the cause for respondents.

Benjamin Yaster argued the cause for amicus curiae American Civil Liberties Union of New Jersey (Gibbons P.C., attorneys; Mr. Yaster and Lawrence S. Lustberg, on the brief).

The opinion of the court was delivered by

WAUGH, J.A.D.

Plaintiffs commenced this action against defendant State of New Jersey, Department of the Treasury (State), in July 2011 to recover damages for wrongful conviction and incarceration as provided by the Mistaken Imprisonment Act (Act), N.J.S.A. 52:4C-1 to -6.[1] Following motion practice described in more detail below, the claims of all plaintiffs except Dayna Hinton, Albert Cass, Robert Henderson, and Antwyne Rolax were dismissed.

By leave granted, the State appeals the Law Division's January 31, 2013 order (1) denying its motion to dismiss for lack of subject matter jurisdiction on the grounds that their complaint was unverified, (2) denying its motion for summary

---

[1] The Act was amended in December 2013. The amendments are applicable only to individuals released from prison or pardoned on or after December 27, 2013. N.J.S.A. 52:4C-7. Unless otherwise indicated, references and citations to the Act are to the pre-amendment version, which governs the disposition of this appeal.

judgment as to Hinton, Cass, Henderson, and Rolax on the theory that their claims were statutorily barred because their convictions resulted from guilty pleas,[2] and (3) granting those plaintiffs' motion to file a verified amended complaint after the statutory time to sue had expired. We affirm in part and reverse in part.

## I.

We discern the following facts and procedural history from the record on appeal.

In 2010, after an investigation by the United States Department of Justice, five members of the City of Camden's Police Department were indicted and charged with conspiracy to deprive criminal defendants of their constitutional rights. Following the indictment, the Camden County Prosecutor voluntarily dismissed charges against approximately 200 criminal defendants, including the plaintiffs in this action. Although some of those criminal defendants had been the subject of the specific cases that gave rise to the federal indictment, others were defendants who had been charged as the result of investigations in which the indicted officers participated. Plaintiffs were in the latter group.

---

[2] The motion judge granted summary judgment as to the other nine plaintiffs for reasons not relevant to this appeal.

Hinton was arrested in September 2007. She pled guilty to possession of a controlled dangerous substance with intent to distribute on November 14, 2007, and was released from custody that day. Hinton was subsequently sentenced to probation for five years. Hinton's conviction was vacated on March 10, 2010.

Cass was arrested in December 2007 for unlawful possession of a weapon. He pled guilty in October 2008. He was subsequently sentenced to five years in prison, with a two year period of parole ineligibility. Cass's conviction was vacated on February 7, 2010, and he was released from prison on March 8.

Henderson was arrested for possession of a controlled dangerous substance in August 2008. He pled guilty on May 26, 2009, and was sentenced to three years in prison, with twenty-seven months of parole ineligibility. Henderson's conviction was vacated on March 10, 2010, and he was released from prison on March 18.

Rolax was arrested in December 2007 for possession of marijuana with intent to distribute. He pled guilty on November 12, 2008, and was released. He was subsequently sentenced to probation. In April 2009, he was sentenced to five years in prison for violation of that probation. His conviction for the underlying offense was vacated on December 18, 2010. He was released from prison on January 7, 2011.

Over eighty of the defendants whose charges had been dismissed by the prosecutor sought damages for wrongful arrest and incarceration in the Law Division, federal court, or both. The thirteen plaintiffs in this action filed their complaint in the Law Division on July 1, 2011. On September 6, 2012, the State filed a motion for summary judgment, arguing, among other things, that a plaintiff's guilty plea absolutely precludes recovery under the "own-conduct" bar found in N.J.S.A. 52:4C-3(c).[3] The American Civil Liberties Union of New Jersey (ACLU) was granted leave to appear as amicus curiae with respect to the issue of whether a guilty plea bars recovery under the Act.

On November 15, the day before oral argument of the State's summary judgment motion, the deputy attorney general assigned to the case wrote to the motion judge and requested an adjournment because he had just discovered that the complaint had not been verified by plaintiffs, as required by N.J.S.A. 52:4C-4. He asserted that their failure to verify the complaint raised an issue of the court's subject matter jurisdiction. The judge adjourned oral argument to allow the State to file a motion to

---

[3] The State filed similar motions in the other cases pending in Camden County, which had been assigned to different judges. Prior to oral argument, at the State's suggestion, all of the cases were reassigned to the judge handling this case, who then stayed the other cases pending the disposition of the State's motion for summary judgment in this case.

dismiss for lack of subject matter jurisdiction. He also allowed plaintiffs to file a motion for leave to amend the complaint to add the required verifications.

The judge heard and decided the original and supplemental motions on December 21. He denied the State's motion to dismiss and granted plaintiffs leave to amend the complaint to add their verifications. The judge granted the State's motion for summary judgment as to nine of the thirteen plaintiffs for reasons not related to this appeal. However, he denied the motion as to Hinton, Cass, Henderson, and Rolax, having concluded that a guilty plea was not a per se bar to recovery under the Act. The implementing order was signed on January 31, 2013.

We granted the State's motion for leave to appeal. We subsequently stayed all of the related cases pending disposition of this appeal.

II.

The State argues that, because N.J.S.A. 52:4C-4 requires a verified complaint, the motion judge lacked subject matter jurisdiction to allow the remaining plaintiffs to file a verified amended complaint after the two-year limitations period had expired. It also argues that, because the convictions of the four remaining plaintiffs resulted from guilty pleas, they are barred from recovery under the "own-conduct" bar found in

N.J.S.A. 52:4C-3(c) as a matter of law.[4] Our review of the motion judge's determination of the legal issues is plenary. Estate of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 385 (2010).

A.

We turn first to the State's argument that the court lacks subject matter jurisdiction because the complaint did not contain the required verifications when it was filed and could not be amended to add them after the limitations period had lapsed.

The State concedes that it did not discover the rather obvious fact that the complaint was not verified until the eve of oral argument on its initial motion for summary judgment. That was well over a year after the complaint was filed. Had the State raised the issue in a timely manner, as required by Rule 4:6-1 and -2,[5] Cass, Henderson, and Rolax would have been able to amend the complaint to add the required verifications prior to the expiration of the limitation period established by

---

[4] The State asks us to decide the second issue even if we agree that subject matter jurisdiction is lacking. The ACLU joins in that request.
[5] The record does not reflect whether the State ever filed an answer. Plaintiffs assert that the State initially agreed to mediate the dispute, an assertion the State has not challenged.

N.J.S.A. 52:4C-4. The two-year limitation period had already expired as to Hinton by the time the complaint was filed.

As soon as the State raised the verification issue, plaintiffs sought leave to amend the complaint to correct the error and comply with N.J.S.A. 52:4C-4. Rule 4:9-1 permits a party to amend a pleading through "leave of court which shall be freely given in the interest of justice." "Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." R. 4:9-3.

The State argues that Rule 4:9-3 is inapplicable here because the unverified complaint never gave the court subject matter jurisdiction in the first place. Citing National State Bank of Elizabeth v. Gonzalez, 266 N.J. Super. 614, 618 (App. Div. 1993) ("courts generally employ strict construction in favor of the sovereign so as not to enlarge the scope of the waiver beyond what the language requires."), appeal dismissed, 137 N.J. 304 (1994), the State argues that, because the Act constitutes a waiver of sovereign immunity, the requirement that the complaint be verified must be strictly construed and viewed as jurisdictional. Consequently, the State argues, the unverified complaint never invoked the court's subject matter

jurisdiction and the opportunity to correct the error was irrevocably lost when the two-year limitation period ended.

As the Supreme Court held in <u>State v. Hudson</u>, 209 <u>N.J.</u> 513, 529 (2012), a court's "overriding goal is to determine as best we can the intent of the Legislature, and to give effect to that intent." Consequently, we review the State's arguments on this issue in the context of the Legislature's stated purpose for creating the remedies embodied in the Act.

> The Legislature finds and declares that innocent persons who have been wrongly convicted of crimes and subsequently imprisoned have been frustrated in seeking legal redress due to a variety of substantive and technical obstacles in the law and that such persons should have an available avenue of redress over and above the existing tort remedies to seek compensation for damages. The Legislature intends by enactment of the provisions of this act that those innocent persons who can demonstrate by clear and convincing evidence that they were unjustly convicted and imprisoned be able to recover damages against the State.
>
> [<u>N.J.S.A.</u> 52:4C-1 (1997), <u>amended by</u> <u>L.</u> 2013, <u>c.</u> 171, § 1.]

While we agree that the Act is, in part, a waiver of sovereign immunity, the language of <u>N.J.S.A.</u> 52:4C-1 also makes it clear that the Act is remedial legislation intended to facilitate the claims of "innocent persons who have been wrongly convicted of crimes and subsequently imprisoned" by according

them remedies "over and above" those already existing, such as claims under the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 to 12-3, or the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 to -2. As a result, the Act is entitled to a more liberal interpretation than might ordinarily be the case. See Green v. Morgan Props., 215 N.J. 431, 447 (2013).

One of the stated purposes of the Act was to help claimants overcome "a variety of substantive and technical obstacles in the law" that had "frustrated" their efforts to seek legal redress. While that language cannot be read as a license simply to ignore the pleading requirements of the Act, including the verification requirement, it prompts us to approach the issue before us with the Legislature's stated concern about technical obstacles firmly in mind.

The State's argument presumes that the filing of a verified complaint is an absolute prerequisite to subject matter jurisdiction. However, in General Trading Co. v. Director, Division of Taxation, 83 N.J. 122, 127-28 (1980) (citation omitted), the Supreme Court held that

> [i]t does not follow . . . that every procedural omission rises to the level of a fatal defect in subject matter jurisdiction regardless of the attendant circumstances . . . . Rather, a review of the cases demonstrates this Court's reluctance to raise a jurisdictional bar where the omission results from justifiable reliance

on prior decisional authority or where the irregularity may be cured without undue delay or irreparable harm to the other party.

It is clear from our review of the record that the State has suffered no actual prejudice from plaintiffs' failure to verify their complaint.

As filed, the complaint clearly set forth the facts upon which plaintiffs' claims were based. In fact, the vast majority of those facts were already known to the State, which had moved to vacate the plaintiffs' underlying convictions in the first place. In addition, the lack of verification did not preclude the State from making a dispositive motion based upon the facts set forth in the complaint. Indeed, the verification was apparently of such little interest to the State that its absence went undetected for an extended period of time and was only discovered the day before that dispositive motion was to be argued. Finally, the defect is easily correctable, at least for three of the four remaining plaintiffs, by the filing of an amended complaint with the required verifications. Any delay was caused by the State's failure to raise the issue in a timely manner. Consequently, "the irregularity [could have been] cured without undue delay or irreparable harm to the [State]." For these reasons, and especially in light of the legislative purposes outlined above, we conclude that plaintiffs' failure to

verify their complaint did not deprive the court of subject matter jurisdiction.

Even if the verification were jurisdictional, we would allow the filing of the amended complaint by Cass, Henderson, and Rolax. In one of our earliest cases, Ciocca v. Hackes, 4 N.J. Super. 28, 33 (App. Div. 1949), we observed that there is an "ever-broadening policy against the procedural frustration of just determinations between parties on the ultimate merits."

Under the particular circumstances of this case, we conclude that the running of the statutory limitations period was equitably tolled because of the State's unreasonable and unexplained delay in raising the issue and the absence of prejudice to the State. We recognize that such equitable relief is not "applied against the State to the same extent as against private parties." O'Neill v. State Highway Dep't of N.J., 50 N.J. 307, 319 (1967). If application of such equitable relief will prejudice essential governmental functions, it will not be applied. Sellers v. Bd. of the Police & Firemen's Ret. Sys., 399 N.J. Super. 51, 58 (App. Div. 2008) (quoting Middletown Twp. PBA Local No. 124 v. Twp. of Middletown, 162 N.J. 361, 367 (2000)). The doctrine can be applied "'in very compelling circumstances, where the interests of justice, morality and common fairness dictate that course.'" Ibid. (quoting Maltese v.

Twp. of N. Brunswick, 353 N.J. Super. 226, 244-45 (App. Div. 2002)). In our view, this is such a case. To hold otherwise would result in a "gotcha" type of defense that would be antithetical to the words and spirit of the remedial legislative intent embodied in N.J.S.A. 52:4C-1.

Consequently, we find no error in the motion judge's decision to deny the State's motion to dismiss and to grant Cass, Henderson, and Rolax leave to amend the complaint to add the required verifications. As to Hinton, we reverse the denial of the motion to dismiss because the complaint was untimely as to her claim when it was first filed.

### B.

We now turn to the State's argument that the motion judge erred by denying its motion for summary judgment against the remaining defendants, each of whose underlying convictions resulted from a guilty plea. The judge rejected the State's argument that a guilty plea is an automatic bar to recovery under the Act, holding that the issue of whether a guilty plea precludes recovery is a question for determination by the finder of fact. Plaintiffs and the ACLU urge us to affirm the judge's denial of summary judgment.

The Act, as it applies to this case, requires a claimant to prove, by clear and convincing evidence, each of the following

A-3234-12T3

three elements in order to recover the damages allowed by N.J.S.A. 52:4C-5:

> a. That he was convicted of a crime and subsequently sentenced to a term of imprisonment, served all or any part of his sentence; and
>
> b. He did not commit the crime for which he was convicted; and
>
> c. He did not by his own conduct cause or bring about his conviction.
>
> [N.J.S.A. 52:4C-3 (1997), amended by L. 2013, c. 171, § 3].

The issue before us is whether a claimant who can satisfy the requirements of (a) and (b) is, as a matter of law, unable to satisfy (c) if the underlying conviction resulted from a guilty plea rather than conviction after a trial.

We start our analysis with the language of the statute itself, which the Supreme Court has held is "'the best indicator'" of the intent of the Legislature. Hudson, supra, 209 N.J. at 529 (quoting State v. Gandhi, 201 N.J. 161, 176 (2010)).

> In the construction of the laws and statutes of this state, both civil and criminal, words and phrases shall be read and construed with their context, and shall, unless inconsistent with the manifest intent of the legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language.

[<u>N.J.S.A.</u> 1:1-1.]

We will not go beyond the language of the statute if it "leads to a clearly understood result." <u>Hudson</u>, <u>supra</u>, 209 <u>N.J.</u> at 529. "[E]xtrinsic aids may not be used to create ambiguity when the plain language of the statute itself answers the interpretative question;" they are only used if "the statutory language results in more than one reasonable interpretation." <u>Ibid.</u>

The State argues that a plain-language reading of the Act, based on the definitions of the operative terms of subsection (c) in accordance with <u>Black's Law Dictionary</u> and tort law concepts, supports its position. <u>Black's</u> defines the noun form of "conduct" as: "Personal behavior; deportment; mode of action; any positive or negative act." <u>Black's Law Dictionary</u> 268 (5th ed. 1979). The verb form of "cause" means: "To be the cause or occasion of; to effect as an agent; to bring about; to bring into existence; to make to induce; to compel." <u>Id.</u> at 200. The meaning of "bring about" is: "To procure; implies completion." <u>Id.</u> at 174. The State also points to the definition of "cause" in the context of tort law as: a "substantial factor contributing to the loss." <u>Conklin v. Hannoch Weisman, P.C.</u>, 145 <u>N.J.</u> 395, 419 (1996). Based upon those definitions, the State argues that a defendant who pleads guilty to an offense of

which the defendant is not guilty necessarily "cause[s] or bring[s] about his conviction" by his own conduct within the meaning of subsection (c) and is, consequently, absolutely precluded from pursuing a claim for damages under the Act for that reason.

The ACLU argues that the State's plain-meaning argument fails because the operative terms at issue are unclear and subject to different interpretations. The ACLU points to the following language from <u>Conklin</u>:

> Although it sounds simple, "'causation' is an inscrutably vague notion, susceptible to endless philosophical argument, as well as practical manipulation." Dean Prosser observed almost fifty years ago[6] that "'Proximate cause remains a tangle and a jungle, a palace of mirrors and a maze . . . [it] covers a multitude of sins . . . [and] is a complex term of highly uncertain meaning under which other rules, doctrines and reasons lie buried.'"
>
> [<u>Id.</u> at 416-417 (alterations in the original) (citations omitted)].

The gist of the ACLU's argument is that it is not clear whether the Legislature intended the analysis under subsection (c) to depend merely on causation-in-fact, in which case it concedes that there would likely be a bar, or proximate cause, in which case the ACLU argues that a factfinder would have to determine

---

[6] Now over sixty years ago.

16

the issue.  At least initially, that is an issue of law rather than fact.

Even if we were inclined to agree with the ACLU that the Act should be interpreted as requiring a claimant to demonstrate, by clear and convincing evidence, that his conduct was not a proximate cause of the conviction underlying the claim, we would not agree that application of the proximate-cause standard requires adjudication by a finder of fact when a claimant has pled guilty.  Using a modified form of Model Jury Charge (Civil) § 6.13, the finder of fact in such a case would apply the following standard:

> To find proximate cause, you must first find that [claimant's guilty plea was a cause of the conviction].  If you find that [the plea] is not a cause of the [conviction], then you must find no proximate cause.

> Second, you must find that [claimant's guilty plea] was a substantial factor that singly, or in combination with other causes [such as the misconduct of the investigating police officers], brought about the [conviction].  By substantial, it is meant that it was not a remote, trivial or inconsequential cause.  The mere circumstance that there may also be another cause of the [conviction] does not mean that there cannot be a finding of proximate cause.  Nor is it necessary for the [guilty plea] to be the sole cause of [the conviction].  However, you must find that [claimant's guilty plea] was a substantial factor in bringing about the [conviction].

A-3234-12T3

> Third, you must find that [the conviction] must have been foreseeable. . . .
>
> In sum, in order to find proximate cause, you must find that the [claimant's guilty plea]] was a substantial factor in bringing about the [conviction] and that some harm to [claimant] was foreseeable from [the guilty plea].

Inasmuch as a guilty plea necessarily results in a conviction and the defendant is so informed during the plea hearing, we see no logical argument for the proposition that the guilty plea is not a proximate cause, or for that matter a cause-in-fact, of the conviction, even if there were other proximate causes, such as the fact that the charges resulted from the improper conduct of the police and the defendant faced a significant period of incarceration at the time of the plea.

The ACLU argues forcefully and persuasively that defendants who are not guilty nevertheless enter guilty pleas, often to accept plea bargains that result in the dismissal of more serious charges or to avoid a more stringent sentence than they might otherwise receive if they went to trial. However, our Supreme Court has clearly established a strong judicial policy disapproving such pleas. For that reason, the Court, through rulemaking and case law, refuses to countenance guilty pleas unless the defendant provides a factual basis for the plea.

Rule 3:9-2 provides, in relevant part, as follows:

> The court, in its discretion, may refuse to accept a plea of guilty and shall not accept such plea without first questioning the defendant personally, under oath or by affirmation, and determining by inquiry of the defendant and others, in the court's discretion, that there is a factual basis for the plea and that the plea is made voluntarily, not as a result of any threats or of any promises or inducements not disclosed on the record, and with an understanding of the nature of the charge and the consequences of the plea. In addition to its inquiry of the defendant, the court may accept a written stipulation of facts, opinion, or state of mind that the defendant admits to be true, provided the stipulation is signed by the defendant, defense counsel, and the prosecutor.

In State v. Smullen, 118 N.J. 408, 414-15 (1990), the Court emphasized that it has "been very sensitive to the requirement that there be an adequate factual basis for a plea of criminal guilt" and that "[e]ven if a defendant wished to plead guilty to a crime he or she did not commit, he or she may not do so. No court may accept such a plea."

More recently, in State v. Taccetta, 200 N.J. 183, 195 (2009), the Court observed that "[t]he notion that a defendant can enter a plea of guilty, while maintaining his innocence, is foreign to our state jurisprudence." The Court rejected the argument that a defense attorney provided constitutionally ineffective assistance to a criminal defendant by failing to advise the defendant that he should plead guilty, despite his

claims of innocence, to accept a favorable plea bargain. Id. at 198. The Court observed that it is

> mindful that our system of justice is not perfect and that, at times, an accused, without the knowledge of the court, may enter a plea of guilty to a crime he did not commit to insulate himself from a potentially greater sentence if found guilty by a jury. That is something over which we have no control. It is another thing, however, for a court to say it is acceptable for a defendant to give a perjured plea. Our court rules and case law require a factual basis for a plea of guilty, that is, a truthful account of what actually occurred to justify the acceptance of a plea. That approach in the long-run is the best means of ensuring that innocent people are not punished for crimes they did not commit. It is an approach that is essential to the very integrity of our criminal justice system.

> Just because we are powerless to control or eliminate every negative practice in our criminal justice system does not mean that we must condone those practices. Though we recognize that sometimes an accused, unknown to the trial judge, will perjure himself to put through a plea agreement, a court cannot give official license to such a practice. Yet, that is precisely what happened in this case. The PCR [post-conviction relief] judge found that, had defendant been given the opportunity, he would have perjured himself at the plea hearing, and an unwitting court would have accepted the plea offer. On that basis, the PCR judge vacated a jury verdict that was the result of a fair trial. That result is antithetical to our court rules, case law, and the administration of justice and, therefore, we must reject it.

> [Ibid.].

A-3234-12T3

It could be argued that the Legislature might nevertheless have taken a different view, consistent with the underlying remedial purposes of the Act, and that it did not intend to exclude recovery by innocent defendants who had pled guilty. However, we find nothing in the Act's legislative history or the wording of N.J.S.A. 52:4C-3 to suggest that the Legislature intended to do so.

Although the Act has a remedial purpose, the Legislature nevertheless set a higher threshold for recovery under the Act by requiring proof by clear and convincing evidence, rather than the preponderance-of-the-evidence standard generally applicable in tort actions. There is no suggestion in the legislative history or the wording of the statute to support the argument that, despite its use of the phrase "by his own conduct cause or bring about his conviction," the Legislature intended to exclude a guilty plea from the application of the broadly worded bar to recovery found in subsection (c). Had the Legislature intended to exempt a claimant's guilty plea from the otherwise broad wording of the own-conduct bar, it could easily have done so or, at the very least, stated that intent somewhere in the legislative history.

We conclude, based upon the reasons outlined above, that the plain meaning of the statutory language requires application

21

of the own-conduct bar to a guilty plea as a matter of law. Consequently, we reverse the motion judge's order to the contrary.

## C.

In summary, we affirm the order on appeal to the extent it denied the State's motion to dismiss the claims of Cass, Henderson, and Rolax for lack of subject matter jurisdiction, but reverse as to Hinton.[7] We also reverse the order as to the denial of the State's motion for summary judgment.

Affirmed in part, reversed in part.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[7] Hinton's claim would, in any event, be subject to dismissal under the Act's own-conduct bar.

**ACCURSO, J.A.D., concurring.**

I join in the judgment of the majority that plaintiffs' claims under the Mistaken Imprisonment Act are barred by their guilty pleas. Because that holding is dispositive of each claim before us, I would not address the State's motion to dismiss for lack of subject matter jurisdiction based on plaintiffs' failure to comply with the Act's verification requirement. See In re Contest of the Nov. 8, 2005 Gen. Election for Office of Mayor of Twp. of Parsippany-Troy Hills, 192 N.J. 546, 560 (2007) (explaining that although election laws are liberally construed, "a complete failure to comply with the verification requirement" of the election contest statute would not be condoned).

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION