**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3628-18T3

DION HARRELL,

     Plaintiff-Appellant,

v.

STATE OF NEW JERSEY
DEPARTMENT OF THE
TREASURY,

     Defendant-Respondent.

_____

Argued January 13, 2020 – Decided February 25, 2020

Before Judges Sabatino, Sumners and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-2768-18.

Glenn Andrew Garber argued the cause for appellant.

Brett J. Haroldson, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Brett J. Haroldson, on the brief).

PER CURIAM

In 1993, plaintiff Dion Harrell was convicted by a jury of second-degree sexual assault, a crime that he indisputably did not commit. He completed his sentence for that crime, and a separate burglary charge, in 1997. After DNA evidence obtained on July 13, 2016 excluded him as the assailant in the sexual assault, he requested that the Monmouth County Prosecutor vacate his sentence. On August 3, 2016, the Monmouth County Prosecutor consented to vacate Harrell's sexual assault conviction along with two related convictions for Megan's Law, N.J.S.A. 2C:7-1 to -11, violations.

Less than two years later, on August 1, 2018, Harrell filed a complaint against the New Jersey Department of the Treasury (Department) seeking money damages under the Compensation for Persons Mistakenly Imprisoned Act ("MIA" or "Act"), N.J.S.A. 52:4C-1 to -7, for the period he was wrongfully imprisoned and for the time he was improperly forced to register as a sex offender. The Department filed a motion to dismiss for failure to state a claim under Rule 4:6-2(e), contending that Harrell, while innocent of the sexual assault charge, failed to file his claim within two-years "after his release from imprisonment"[1] as specifically prescribed by the MIA. N.J.S.A. 52:4C-4.

---

[1] The MIA also permits an individual to file within two years "after the grant of a pardon," a circumstance inapplicable here. N.J.S.A. 52:4C-4.

Relying on <u>Watson v. N.J. Dep't of Treasury</u>, 453 N.J. Super. 42 (App. Div. 2017), the trial court granted the Department's motion. We fully agree with the trial court's well-reasoned analysis that Harrell failed to file his claim within two-years of his release from prison as required by the MIA and is time barred under the clear and unambiguous language of the statute. We also reject Harrell's request that we equitably toll the statutory period.

I.

We discuss the relevant and undisputed factual background and procedural history of Harrell's convictions and his request for compensation under the MIA to provide context for our opinion. In September 1988, a seventeen-year old girl was grabbed from behind by her neck and dragged with her mouth covered into an empty parking lot where she was sexually assaulted. After the assailant stole her purse, he left the victim who ran home, told her mother who then called the police. The victim was then taken to the emergency room where a rape kit obtained from her examination was turned over to police, refrigerated, and transported to the New Jersey State Police East Regional Laboratory for analysis.

Despite claiming he was elsewhere playing basketball with friends at the time of the sexual assault, Harrell was arrested shortly thereafter and released

on bail pending trial. Harrell was tried and convicted of second-degree sexual assault and sentenced to an eight-year custodial term. At the time of his conviction, Harrell had a pending unrelated third-degree burglary charge for rummaging through a parked vehicle. Harrell pled guilty to the burglary charge and was sentenced to a four-year prison term, to run consecutively to the sexual assault conviction.

Harrell served four years in prison before being released on parole on March 26, 1997. Following his release, Harrell was required to register as a sex offender under Megan's Law. Harrell failed to comply with the registry program and was arrested, pled guilty, and re-imprisoned on two separate occasions, June 25, 2004, and July 17, 2013.

In his merits brief, Harrell states that "at the time of [his] prosecution and . . . release, DNA testing was not available." He further asserts, without any record support, that "in 2002, when the law changed to permit DNA testing for incarcerated defendants asserting innocence, [he] reached out to the Innocence Project for assistance" but was "turned away" "because the law at the time only applied to incarcerated defendants." In his verified petition, he asserted that "in 2014 the Innocence Project took on [his] case and filed a motion to have DNA testing done . . . [and] [a]fter . . . initial opposition by the Monmouth County

4

Prosecutor, the motion was granted on consent on February 13, 2015." On July 13, 2016, a report from Bode Cellmark Forensic excluded Harrell as the assailant in the sexual assault, "conclusively proving his innocence." Harrell's sexual assault conviction and the two Megan's Law violations were subsequently vacated on August 3, 2016.

On August 1, 2018, Harrell filed a verified complaint in the Law Division, seeking compensation for his wrongful imprisonment under the MIA. The complaint requested relief of $50,000 per year for each year Harrell served in prison for his wrongful conviction, and $25,000 per year for each year he was on the sex offender registry.

In opposing the Department's motion to dismiss, Harrell argued that the MIA should be interpreted expansively to allow claims to be brought within two years of a sentence being vacated. He maintained that reading the statute to permit only claims to be brought within two years of release from prison, or two years from the date of a pardon, would be contrary to the Legislature's intent. Harrell alternatively argued that equitable tolling should apply to permit his belated filing.

In his oral decision, the trial judge reasoned that Harrell's failure to file his complaint within two years of being released from prison barred his claim.

A-3628-18T3

Although the judge did not specifically address Harrell's equitable tolling argument, the judge was clearly aware of the equities attendant to his decision, commenting:

> The real issue is when does this cause of action accrue. And is this one of those instances where the [L]egislature just got it wrong. And if you look at their intent which, you know, I realize the traditional arguments advanced here are the [L]egislature is presumed to act correctly when they act. But as plaintiff's counsel does indicate, there are those rare circumstances where if you ask me to read this legislation in a remedial fashion to protect those who have been wrongly incarcerated, then I need to take a little bit more of an expansive view of this.

The judge further noted:

> [U]ntil the charges were vacated, it would have been an immediate [Rule] 4:62 motion probably filed by a frivolous litigation letter had any attorney brought suit saying that my client's innocent and you know he's entitled to compensation under the [MIA] when there would be a valid, an undisturbed criminal conviction.

The judge nonetheless acknowledged that he was bound by this court's authority in Watson, 453 N.J. Super. at 42, to strictly apply the "clear and unambiguous" two-year statute of limitations imposed by the MIA. This appeal followed.

Before us, Harrell raises the same two arguments rejected by the trial court. First, he maintains that despite the MIA's clear language, this court can

6

and should interpret the statute to give it the meaning and effect the Legislature intended by allowing him to bring his claim within two years of his vacated conviction. Second, he contends that we should apply the doctrine of equitable tolling as an alternative remedy because plaintiff was prevented from asserting his rights "in some extraordinary way."

In response, the Department contends that the clear and unambiguous language of the MIA bars Harrell's untimely claims and the facts here do not warrant the equitable tolling of the statutory period. The Department also advances two arguments not presented to the trial court. Specifically, it maintains that because Harrell pled guilty to Megan's Law offenses, "he could not recover for any time spent in prison as a result of [those] violations." The Department also claims that even though Harrell received a consecutive, and not a concurrent sentence, "he would have still . . . spent four years in prison for the burglary regardless of the outcome of the sexual assault charges" and consequently he should not receive any compensation for the four years he was unjustly incarcerated on the sexual assault offense.

## II.

We review an order granting a motion to dismiss de novo and we owe no deference to the trial court's conclusions. Castello v. Wohler, 446 N.J. Super.

7

1, 14 (App. Div. 2016); <u>Rezem Family Assocs., LP v. Borough of Millstone</u>, 423 N.J. Super. 103, 114 (App. Div. 2011). A motion to dismiss for failure to state a claim must be denied if, giving plaintiff the benefit of all his allegations and all favorable inferences, a claim has been made out. <u>R.</u> 4:6-2(e); <u>Banco Popular North America v. Gandi</u>, 184 N.J. 161, 165 (2005). The inquiry is limited to examining the legal sufficiency of the facts alleged on the face of the complaint. <u>Printing Mart-Morristown v. Sharp Electronics Corp.</u>, 116 N.J. 739, 746 (1989).

Effective August 25, 1997, the MIA provides a cause of action for individuals who were imprisoned and can prove by clear and convincing evidence that they are innocent of the crime for which they served time. The Act provides:

> The Legislature finds and declares that innocent persons who have been convicted of crimes and subsequently imprisoned have been frustrated in seeking legal redress and that such persons should have an available avenue of redress to seek compensation for damages. The Legislature intends by enactment of the provisions of this act that those innocent persons who can demonstrate by clear and convincing evidence that they were mistakenly convicted and imprisoned be able to recover damages against the State.
>
> In light of the substantial burden of proof that must be carried by such persons, it is the intent of the Legislature that the court, in exercising its discretion as

permitted by law regarding the weight and admissibility of evidence submitted pursuant to this section, may, in the interest of justice, give due consideration to difficulties of proof caused by the passage of time, the death or unavailability of witnesses, the destruction of evidence or other facts not caused by such persons or those acting on their behalf.

[N.J.S.A. 52:4C-1.]

"[T]he Act is remedial legislation intended to facilitate the claims of innocent persons who have been wrongly convicted of crimes and subsequently imprisoned by according them remedies over and above those already existing . . . ." Mills v. State, 435 N.J. Super. 69, 77 (App. Div. 2014) (internal quotations omitted). In order to recover damages under the MIA, a claimant is required to prove, by clear and convincing evidence, each of the following elements:

a. That he was convicted of a crime and subsequently sentenced to a term of imprisonment, served all or any part of his sentence; and

b. He did not commit the crime for which he was convicted; and

c. He did not commit or suborn perjury, fabricate evidence, or by his own conduct cause or bring about his conviction . . . ; and

d. He did not plead guilty to the crime for which he was convicted.

[N.J.S.A. 52:4C-3.]

9

Because the "Act is, in part, a waiver of [state] sovereign immunity," it is not without limits. <u>Mills</u>, 435 N.J. Super. at 77. In this regard, a falsely imprisoned person who wishes to recover under the MIA must bring his or her claim "within a period of two years after his release from imprisonment, or after the grant of a pardon to him . . . ." N.J.S.A. 52:4C-4. For individuals like Harrell whose release preceded the MIA's 1997 enactment, the statute provided that "any eligible claimant released or pardoned during the five-year period prior to May 2, 1996 shall have two years from the effective date of [the] act to file suit." Thus, the MIA by its plain language does not permit a vacated sentence to be the triggering date for the accrual of the statute of limitations.

Statutes of limitations serve at least three important policy interests. The first is to instill in society a "'measure of repose.'" <u>Caravaggio v. D'Agostini</u>, 166 N.J. 237, 245 (2001) (quoting <u>Farrell v. Votator Div. of Chemetron Corp.</u>, 62 N.J. 111, 115 (1973)). The New Jersey Supreme Court has recognized this as the primary benefit of statutes of limitations, finding that "eventual repose creates desirable security and stability in human affairs." <u>Galligan v. Westfield Centre Serv., Inc.</u>, 82 N.J. 188, 191-92 (1980).

Second, the statutes encourage the prompt settlement of disputes, so that potential litigants do not sit on their rights. "By penalizing unreasonable delay,

such statutes induce litigants to pursue their claims diligently so that answering parties will have a fair opportunity to defend." Id. at 192 (citations omitted); see also Troum v. Newark Beth Israel Med. Ctr., 338 N.J. Super. 1, 22 (App. Div. 2001). Third, statutes of limitations help assure that judges and juries do not have to adjudicate "stale claims." Mitzner v. W. Ridgelawn Cemetery, Inc., 311 N.J. Super. 233, 236 (App. Div. 1998).

### III.

Harrell offers five reasons in support of his first argument on appeal. Initially, he contends that a literal reading of the statute would produce an "absurd result" and is "at odds with the overall statutory scheme" because despite his "diligent" efforts to pursue exoneration, he was not allowed to make use of DNA testing to prove his innocence within the two-year period after his release from prison.

Second, he argues that we should view the MIA in conjunction with related legislation that permits DNA testing for the wrongfully convicted. According to Harrell, if the Legislature in 2015 recognized that DNA testing should not be limited to people still in prison, then the MIA, which is intertwined with the overall post-conviction statutory scheme, should be interpreted to

accept claims that are brought within two years of exoneration, when the claim first becomes cognizable.

Third, he maintains that under the MIA, Harrell must prove by clear and convincing evidence that "[h]e did not commit the crime for which he was convicted," N.J.S.A. 52:4C-3, a showing he contends was impossible for him to make until his conviction was reversed, because a criminal conviction is conclusive evidence of guilt.

Fourth, he posits that the pardon provision in the MIA supports his interpretation that a person should be able to bring a claim within two years of their conviction being vacated because a pardon exoneree would be able to achieve relief under the Act even though more than two years has passed since being released from prison. Harrell argues it is therefore "illogical" for the Legislature to afford access to this type of exoneree yet preclude someone like Harrell who is equally worthy.

Fifth, he claims that if forcing a claimant to file suit under the MIA before he is released from custody was considered unfair by the Legislature (as evidenced by the accrual date of the statute of limitations not beginning to run until after release from prison), it is "inconceivable" that the Legislature wanted the statute of limitations to begin running before a claim can even be proven.

12

We have thoroughly considered all of these arguments and reject them as they effectively request that we re-write a clear and unambiguous statute and ignore the Legislature's clear manifestation that claims like Harrell's must be filed within two years "after his release from imprisonment" or "after the grant of a pardon." The vacatur of a sentence or dismissal of criminal charges simply is not a triggering event under the MIA.

When interpreting a statute, we begin with its plain language, which is the "best indicator" of legislative intent. State v. Rodriguez, 238 N.J. 105, 113 (2019). A statute's plain language "must be construed 'in context with related provisions so as to give sense to the legislation as a whole.'" Ibid. (quoting Spade v. Select Comfort Corp., 232 N.J. 504, 515 (2018). "Unless it is 'inconsistent with the manifest intent of the legislature,' or 'another or different meaning is expressly indicated,' we ascribe to the Legislature's words and phrases 'their generally accepted meaning, according to the approved usage of the language.'" Finkelman v. Nat'l Football League, 236 N.J. 280, 289 (2019) (quoting N.J.S.A. 1:1-1).

"If the plain language leads to a clear and unambiguous result, then our interpretive process is over." Johnson v. Roselle EZ Quick LLC, 226 N.J. 370, 386 (2016) (quoting Richardson v. PFRS, 192 N.J. 189, 195 (2007)). However,

"if there is ambiguity in the statutory language that leads to more than one plausible interpretation, we may turn to extrinsic evidence, 'including legislative history, committee reports, and contemporaneous construction.'" DiProspero v. Penn, 183 N.J. 477, 492-93 (2005).

This court has previously interpreted the statute of limitations provision of the MIA in Watson, 453 N.J. Super. at 47. In that case, the trial court granted the State's motion to dismiss because Watson did not file his complaint within two years of being released from prison. Ibid. Before us, Watson argued that the two-year limitation period should begin to run when his 1988 conviction was vacated, as opposed to two years after he was released from prison. Id. at 46-47. We rejected that argument and affirmed the trial court's decision and found "the plain language [of the statute] is clear and unambiguous," id. at 49, and reasoned:

> The statute identifies two triggering events from which to calculate the two-year statute of limitations: release from imprisonment or a pardon. It is apparent from the plain language of the MIA that the Legislature considered pardon to be a separate and independent triggering event. The Legislature did not include as a triggering event, reversals or vacatur of convictions subsequent to a criminal defendant's release from imprisonment. The legal consequences of each are not always equivalent.
>
> [Ibid. (emphasis added).]

Harrell points out that the facts in <u>Watson</u> are distinguishable from the facts here. He argues Watson was most likely guilty and his sentence was vacated on constitutional grounds rather than innocence grounds, and that he committed many other serious crimes. Further, Watson had an opportunity to vacate his sentence in 2000 and chose not to do so, instead waiting fourteen years after the remedy became available to seek vacatur. In contrast, Harrell alleges (without record support) that he sought assistance from the Innocence Project to vacate his sentence in 2002.

While we acknowledge that Harrell is an eminently more sympathetic party than Watson, and the circumstances regarding his claim are clearly distinct, the <u>Watson</u> holding was not premised on any of those distinguishing facts. Rather, the <u>Watson</u> court correctly interpreted the statute of limitations provision of the MIA to not include reversals or vacaturs of convictions as additional triggering events that start the limitations clock, a conclusion we still endorse.

Turning to Harrell's remaining arguments, we reject his claim that he was unable to access his DNA evidence until 2016 as unsupported by the record and speculative. In addition, we find no support in the text of the MIA that the

Legislature intended it to be read in conjunction with N.J.S.A. 2A:84A-32A,[2] and certainly not in a manner that contravenes the clear statutory period for bringing claims. See Carlson v. City of Hackensack, 410 N.J. Super. 491, 497 (App. Div. 2009) (holding that because the statutory language was "clear and unambiguous, [the court] need not resort to reading the statutes in pari materia").

Further, the pardon exception, rather than supporting Harrell's argument undermines it. Indeed, by permitting the two-year statutory period to accrue upon a pardon, the Legislature clearly expressed its intent that an event, other than the release from prison, can trigger accrual. The Legislature did not identify a vacated conviction as such an event, however. We therefore cannot conclude under these circumstances that the dismissal of Harrell's complaint, while understandably disappointing to him, is an "absurd" result or one that was "inconceivable" to the Legislature.

---

[2] Amended in 2015 and effective March 1, 2016, N.J.S.A. 2A:84A-32A provides procedures for obtaining DNA evidence. As currently enacted, it permits "[a]ny eligible person [to] . . . make a motion before the trial court that entered the judgment of conviction for the performance of forensic DNA testing." (Emphasis added). A previous version of that statute, effective July 7, 2002, permitted only a "person who was convicted of a crime and . . . currently serving a term of imprisonment" to request DNA testing.

Harrell alternatively requests that this court apply the doctrine of equitable tolling[3] to allow him to bring a claim under the MIA, contending that he was prevented from asserting his rights "in some extraordinary way." Specifically, he maintains that at all relevant times, "New Jersey law barred Harrell from seeking DNA testing to prove his innocence until 2016, when [N.J.S.A.] 2A:84A-32A was amended."

"Equitable tolling is traditionally reserved for limited occasions." F.H.U. v. A.C.U., 427 N.J. Super. 354, 379 (App. Div. 2012). A statute of limitations may be tolled "(1) [if] the defendant has actively misled the plaintiff, (2) if the plaintiff has 'in some extraordinary way' been prevented from asserting his rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum . . . ." Ibid.; see also Freeman v. State, 347 N.J. Super. 11, 31 (App. Div. 2002). Equitable tolling affords relief from "inflexible, harsh or unfair application of a statute of limitations, but it requires the exercise of reasonable insight and diligence by a person seeking its protection." Villalobos, 342 N.J. Super. at 52. However, "absent a showing of intentional inducement

---

[3] "Equitable tolling assumes the accrual of the action but intercepts and delays the bar of the statute of limitations . . . ." Villalobos v. Fava, 342 N.J. Super. 38, 46 (App. Div. 2001).

or trickery by a defendant, the doctrine of equitable tolling should be applied sparingly and only in the rare situation where it is demanded by sound legal principles as well as the interests of justice." Freeman, 347 N.J. Super. at 31.

As noted, in his verified complaint, Harrell asserts only that "[i]n 2014, the Innocence Project took on [p]laintiff's case and filed a motion to have DNA testing done, which was not available when plaintiff was prosecuted." (Emphasis added). He further verified that after initially objecting, the Monmouth Prosecutor consented to DNA testing on February 13, 2015, resulting in the July 13, 2016 Bode Cellmarks Forensic report. In his merits brief, however, Harrell claims, without appropriate citation to the record, that "[i]n 2002, when the law changed to permit DNA testing for incarcerated defendants asserting innocence, Harrell reached out to the Innocence Project for assistance. However, because the law at the time only applied to incarcerated defendants, Harrell was turned away."[4]

---

[4] In support of that claim, Harrell's merits briefs improperly cite to statements his counsel made at oral argument before the trial court. See Celino v. Gen. Accident Ins., 211 N.J. Super. 538, 544 (App. Div. 1986) ("Facts intended to be relied on which do not already appear of record and which are not judicially noticeable are required to be submitted to the court by way of affidavit or testimony."). Further, Harrell's verified complaint makes no mention of any contact with the Innocence Project at any point prior to 2014.

Harrell does not assert in his verified complaint that he took any action during the period between August 25, 1997, when the MIA was enacted and which triggered the two-year statutory period, and when it lapsed two years later on August 25, 1999. Harrell did not maintain that he filed any request for DNA evidence, either through an action under the MIA or otherwise. Thus, Harrell's verified statement that "DNA testing . . . was not available when [he] was prosecuted" does not address the critical analytical period.

We also observe that contrary to his unsupported assertions, Harrell was not precluded from requesting DNA evidence prior to 2002. Indeed, in State v. Cann, the court held that a convicted individual in a post-conviction relief application had the right to request DNA testing, stating that "if a defendant desires a DNA sample for testing purposes . . . he must make an application to the trial court." 342 N.J. Super. 93, 103 (App. Div. 2001); see also State v. Hogue, 175 N.J. 578, 582 (2003). Relying on Rule 1:1-2, we noted that though "applications of this type [were] not envisioned by [Rule] 3:20-1, which authorizes a trial judge, on defendant's motion, to grant defendant a new trial 'if required in the interest of justice' . . . [t]he absence of a rule authorizing the filing of a motion does not deprive a litigant of the right to make an application to the court." Ibid.

A-3628-18T3

The fact remains that on this record, Harrell took no action during this operative period and his claim that DNA evidence was unavailable is therefore not only unsupported but speculative.[5] We therefore are unable to conclude that he was "in some extraordinary way" prevented from asserting his rights. F.H.U., 427 N.J. Super. at 379; see also Freeman, 347 N.J. Super. at 31.[6]

Even were we to accept Harrell's argument that the 2002 version of N.J.S.A. 2A:84A-32A acted as a bar for him to obtain DNA evidence until its 2016 amendment, his lack of proven action from between 1997 and 1999, and from 1999 to 2002, establishes that he failed to exercise the requisite "reasonable insight and diligence" necessary to obtain the protection of the equitable tolling doctrine. Villalobos, 342 N.J. Super. at 52.

---

[5] In this regard, we part company with the trial court's obiter dictum that until the prosecutor vacated Harrell's conviction, any suit under the MIA would have resulted in an immediate Rule 4:62 motion likely followed by a frivolous litigation letter. First, no such application was ever filed and therefore any prognostication regarding the outcome is entirely speculative. Second, we note that the MIA required that Harrell clearly and convincingly establish that: 1) he was convicted, 2) sentenced and served all or a part of his sentence, 3) he "did not commit the crime for which he was convicted," and 4) he "did not commit or suborn perjury, fabricate evidence" or bring about his conviction by "his own conduct." As noted, infra, Harrell actually possessed forensic evidence that established his innocence of the sexual assault conviction two years prior to filing suit.

[6] Harrell does not allege that he was "actively misled" or that he "timely asserted his rights mistakenly in the wrong forum." Ibid.

A-3628-18T3

Moreover, even when Harrell received the Bode Cellmarks Forensic report in July 2016, he waited over two years before filing his August 1, 2018 complaint. We acknowledge that Harrell filed his complaint within two years of the court's August 3, 2016 decision to vacate his sentence, but as detailed, supra, the MIA is not triggered when a sentence is vacated. The unexplained over-two-year delay from receipt of the Bode Cellmarks report, and near two-year delay in filing his complaint after his conviction was vacated, provides further support for our conclusion that it would be inappropriate to apply the equitable tolling doctrine here.[7]

V.

In light of our decision, we need not address the merits of the Department's alternative argument Harrell's Megan's Law and burglary convictions affect his recoverability under the MIA, nor Harrell's assertion that the Department waived those claims by failing to raise them in the trial court. See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[7] In any event, the Legislature has the authority to adopt statutory amendments to provide relief to persons such as Harrell, and to evaluate the fiscal consequences of doing so. We are aware such bills have been proposed but not enacted.

A-3628-18T3