**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0875-23

J.D.A.,[1]

    Plaintiff-Appellant,

v.

STATE OF NEW JERSEY,
DEPARTMENT OF THE
TREASURY,

    Defendant-Respondent.

_____

Submitted February 26, 2025 – Decided June 10, 2025

Before Judges Currier and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-0492-22.

J.D.A., appellant pro se.

Matthew J. Platkin, Attorney General, attorney for respondent (Janet Greenberg Cohen, Assistant Attorney General, of counsel; Eric Intriago, Deputy Attorney General, on the brief).

---

[1] Consistent with our prior opinion, we use initials to preserve confidentiality of the child victim in accordance with <u>Rule</u> 1:38-3(c)(9).

PER CURIAM

Plaintiff J.D.A. appeals from a November 17, 2023 order granting defendant New Jersey, Department of the Treasury's (the State) motion for summary judgment pursuant to the Mistaken Imprisonment Act (MIA), N.J.S.A. 52:4C-1 to -7. Having carefully reviewed the record in the light most favorable to plaintiff under applicable law, we conclude the trial court properly granted summary judgment dismissing the complaint, as the MIA restricts recovery to plaintiffs who establish their innocence of the crimes for which they were imprisoned, and plaintiff failed to sustain that burden. We affirm.

I.

Plaintiff's MIA action arises from his incarceration based on the conviction we reversed on direct appeal in State v. D.A., No. A-5199-17 (App. Div. Oct. 9, 2020) (slip op. at 15). From our prior decision and the summary judgment record we distill the following facts and procedural history pertinent to this appeal.

A.

Plaintiff "was indicted in 2014 and charged with second-degree endangering the welfare of a child, [N.J.S.A. 2C:24-4(a)], his stepdaughter, [V.S.] . . . [based on] alleged sexual conduct [that] occurred between October 1,

2

2005[] and June 1, 2012." Id. at 3. In 2018, a jury convicted plaintiff of that charge. Id. at 2. Plaintiff appealed his conviction, arguing his indictment was defective, the criminal endangering statute contained unconstitutionally vague language, the jury instructions were erroneous, and his sentence was excessive. Ibid. Although we rejected plaintiff's challenges to the indictment and the underlying statute, we ultimately reversed and remanded the matter for a new trial, concluding only that the trial court's "unanimity instruction was insufficient under the circumstances and deprived defendant of a fair trial." Id. at 15.

On January 11, 2022, appearing before the trial court with counsel, plaintiff waived his right to a trial, and the second-degree endangering charge was amended to the petty disorderly persons offense of harassment, N.J.S.A. 2C:33-4(c), to which plaintiff pled guilty. Prior to the plea colloquy, the prosecutor explained the reasons for the favorable agreement:

> As Your Honor is aware, this matter was originally tried a couple of years ago. There was a guilty verdict rendered. It did go up on appeal and was remanded for a retrial. However, given our consultation with the victim in this case, who is now an adult, we consulted with her back at the time it was remanded and also back in the fall, we've come to this resolution in order to have some measure of justice for her, and she is understanding and in agreement.

A-0875-23

Plaintiff's counsel then elicited the factual basis in which plaintiff admitted that when V.S. was under the age of sixteen, he "on repeated occasions . . . engage[d] in a course of conduct where [he] yelled at her[,] . . . with the purpose to alarm . . . or annoy or seriously annoy her[.]"

The matter proceeded to sentencing, and in accordance with the plea agreement, the court imposed only the mandatory minimum fines. In exchange, the prosecutor agreed to dismiss the remaining charges.[2]

### B.

Approximately one month later, plaintiff filed a complaint in the Law Division seeking relief under the MIA. After discovery was complete, the State subsequently moved for summary judgment, arguing plaintiff had presented no evidence of his innocence of the endangering charge for which he was convicted and incarcerated. It asserted that defendant was found guilty in the original trial, and "there has been no finding of not guilty in this case." The State further contended "that plaintiff[ was] not eligible for damages under the MIA because he entered a guilty plea, and there is evidence that his own conduct caused or led to his conviction."

---

[2] We note the indictment charged only one count of second-degree endangering.

Plaintiff countered that he "was originally facing a second-degree offense and his plea was to a petty disorderly person offense for raising his voice and yelling at his step[]daughter." He claimed "[t]here was nothing sexual in that plea and a petty disorderly person [offense] is not a crime within the meaning of the New Jersey State Constitution," asserting the "charge to which [he] pled guilty [wa]s 'monumentally different' from that with which [he] was originally charged and convicted."

Plaintiff presented no facts demonstrating innocence, nor did he submit a counter-statement of material facts in response to the State's motion in which the State relied on plaintiff's stepdaughter's testimony at the criminal trial describing "a litany of inappropriate physical contacts, improper sexual comments, and violations of her personal privacy while showering by [plaintiff] when she was between the ages of nine and fourteen."

The trial court, taking judicial notice of the facts set forth in this court's unpublished decision in the criminal matter, found those facts were "substantially accurate and . . . constitute[d] part of the record of this case." Specifically, the court cited to the following facts:

> In 2014, plaintiff was indicted and charged with endangering the welfare of a child, his step[]daughter, in violation of N.J.S.A. 2C:24-4, a crime of the second degree. The statute . . . criminalizes sexual conduct

> which would impair the morals of a child for whom . . . [plaintiff] has assumed responsibility.
>
> It was alleged . . . plaintiff engaged in . . . criminal sexual conduct . . . towards his step[]daughter for a period of approximately six-and-a-half years beginning when she was about nine-years-old. The step[]daughter testified at trial and recounted multiple instances of inappropriate physical contact, improper sexual comments and violations of personal privacy by . . . plaintiff.

The court then reviewed this court's decision in Mills v. State, Department of the Treasury, 435 N.J. Super. 69, 77 (App. Div. 2014), and the subsequent amendments to the MIA, recognizing "that a guilty plea can render a claimant ineligible for damages under the statute."

The court found the motion record "devoid of any evidence supporting the claim that plaintiff did not commit the crime of which he was convicted by a jury in January 2018." Specifically, the court determined there were no genuine issues of fact in controversy because "plaintiff did not substantively oppose the facts proffered in support of [the State's] motion and plaintiff did not provide a counter-statement of facts setting forth the clear and convincing evidence by which a reasonable jury could conclude the plaintiff did not commit the crime that led to his imprisonment." The court added that the factual basis for the harassment guilty plea entered by plaintiff "does not contradict or invalidate the

6

jury's prior determination beyond a reasonable doubt that plaintiff had engaged in more severe criminal conduct."

Ultimately, the court granted the State's summary judgment motion for two reasons:

> (1)[] [T]here is undisputed evidence of a guilty plea establishing that . . . plaintiff's own conduct caused or brought about his conviction, not necessarily for the second-degree but definitely for the conviction of the offense; [and] (2)[] there is no evidence, let alone clear and convincing evidence in the record before me by which a reasonable jury could conclude that plaintiff did not commit the crime that led to his imprisonment.

The court "focused on the legislative intent [of] the MIA[,] . . . intended to compensate innocent people who were mistakenly convicted and imprisoned" and determined there was "nothing in the record . . . indicating that . . . plaintiff could meet the admittedly high standard of proving his innocence of the charges involving his minor step[]daughter."

## II.

We review the trial court's summary judgment ruling de novo, applying the same standard as the motion judge. See R. 4:46-2(c); Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 405 (2014). We consider the facts in a light most favorable to the non-moving party. See Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). The court must analyze the evidence "to identify

whether there are genuine issues of material fact and, if not, whether the moving party is entitled to summary judgment as a matter of law." Bhagat v. Bhagat, 217 N.J. 22, 38 (2014).

The MIA provides a cause of action for individuals who can prove by clear and convincing evidence their innocence of the crime for which they were imprisoned. See N.J.S.A. 52:4C-1. Specifically, to succeed on an MIA claim, a plaintiff must prove:

> a. That he was convicted of a crime and subsequently sentenced to a term of imprisonment, served all or any part of his sentence; and
>
> b. He did not commit the crime for which he was convicted; and
>
> c. He did not commit or suborn perjury, fabricate evidence, or by his own conduct cause or bring about his conviction. Neither a confession or admission later found to be false shall constitute committing or suborning perjury, fabricating evidence, or causing or bringing about his conviction under this subsection; and
>
> d. He did not plead guilty to the crime for which he was convicted.
>
> [N.J.S.A. 52:4C-3.]

"[T]he Act is remedial legislation intended to facilitate the claims of innocent persons who have been wrongly convicted of crimes and subsequently

imprisoned by according them remedies over and above those already existing[.]" Watson v. State, Dep't of Treasury, 453 N.J. Super. 42, 48 (App. Div. 2017) (alterations in original) (quoting Mills, 435 N.J. Super. at 77).

We have carefully reviewed the record and concur that plaintiff failed to present sufficient evidence to sustain a claim under the MIA, failing to present proof or even assert his innocence of the charge for which he was incarcerated as required by N.J.S.A. 52:4C-3(b). His reliance on our prior decision vacating his conviction is wholly misplaced, as we reversed the judgment of conviction based solely on a defect in the jury instructions, remanded for a new trial, and made no finding of innocence. Similarly, his reliance on his plea to a downgraded charge pursuant to a plea agreement holds insufficient evidentiary value to sustain a claim.

Plaintiff incorrectly argues that he is entitled to proceed to trial on his MIA claim because he pled guilty to a downgraded offense of harassment, rather than the original endangering charge for which he was imprisoned after conviction by a jury. In the very case plaintiff mistakenly relies upon for relief, Kamienski v. State, Department of Treasury, 451 N.J. Super. 499, 516 (App. Div. 2017), we made clear that reversal of a prior conviction on post-conviction review does not equate with a finding of innocence, and, absent "a finding that

9

a claimant was actually innocent, [those] findings have limited probative value." We made no such finding here; and, consequently, our decision carries no substantive weight on the issue of innocence.

The trial court correctly found plaintiff presented no evidence to indicate his ability to prove by clear and convincing evidence his innocence of the endangering charge. To establish the second-degree offense of endangering the welfare of a child, N.J.S.A. 2C:24-4(a) requires proof that a person who assumed a legal duty of care of a child engaged in sexual conduct that had the "capacity to impair or debauch the morals of the child." State v. Bryant, 419 N.J. Super. 15, 23 (App. Div. 2011).

As the court noted, plaintiff's complaint does not assert a claim of innocence of this charge. The complaint alleges only that "[p]laintiff was incarcerated in New Jersey State prisons from January 14, 2018 until released on parole on May 11, 2019," "[p]laintiff's singular [second-degree] charge was ultimately resolved on January 11, 2022 when it was downgraded to a petty disorderly person [offense], a non-felony violation," and "[t]he original charge . . . was dismissed." These claims omit the vital innocence component essential to any MIA claim, and the record similarly lacks any support for that element.

A-0875-23

In his complaint, plaintiff also profoundly understates the purpose of the MIA, erroneously claiming its intent "is to reimburse former prisoners an amount of money for their time spent in jail or prison if their original charges are dismissed." Plainly, the "Legislature's stated 'intent' is to provide redress for 'those innocent persons who can demonstrate by clear and convincing evidence that they were mistakenly convicted and imprisoned.'" Kamienski, 451 N.J. Super. at 513 (quoting N.J.S.A. 52:4C-1).

The record of plaintiff's harassment plea and sentence similarly provides little support for plaintiff's position, as the prosecutor, in setting forth the terms of the plea bargain, made clear that the State agreed to the downgraded charge on consultation with the then-adult victim to "have some measure of justice" and presumably some degree of finality. Thereafter, the plea allocution reveals plaintiff admitted he repeatedly harassed the victim. No representation can be found or inference can be drawn from the plea proceeding to indicate the favorable plea disposition equated to an exoneration of plaintiff.

The mere plea to downgraded charges pursuant to a plea bargain after reversal of conviction for offenses for which an individual was originally imprisoned fails to establish, per se, an MIA claim. "The cornerstone of the plea bargain system is the 'mutuality of advantage' it affords to both [the] defendant

11

and the State."  State v. Taylor, 80 N.J. 353, 361 (1979) (quoting Bordenkircher v. Hayes, 434 U.S. 357, 363 (1978)).  "The system enables a defendant to reduce his penal exposure and avoid the stress of trial while assuring the State that the wrongdoer will be punished and that scarce and vital judicial and prosecutorial resources will be conserved through a speedy resolution of the controversy." Ibid.  Although a plea establishes a defendant's guilt of the admitted charge, it does not prove innocence of charges dismissed under a presumably mutually advantageous plea agreement.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division