WHIPPLE, J.A.D.
*44 Plaintiff John Watson appeals from a July 22, 2016 order granting defendant New Jersey Department of the Treasury's (Treasury) motion to dismiss his complaint pursuant to the Mistaken Imprisonment Act (Act), N.J.S.A. 52:4C-1 to -7. We affirm because plaintiff's complaint was not filed within the two-year statute of limitations under the Act.
*45 We discern the following facts and procedural history from the record. On November 17, 1988, plaintiff was arrested in Harrisburg, Pennsylvania, after delivering cocaine to an undercover police officer. Six days later, on November 23, 1988, the New Jersey State Police (State Police) arrested plaintiff on the New Jersey Turnpike (Turnpike) for possession of cocaine and weapons. Plaintiff was tried on these charges before a jury and found guilty of possession of controlled dangerous substances and weapons. We affirmed this conviction. State v. Watson, No. A-1096-91 (App. Div. Feb. 15, 1994).
Plaintiff asserts he was tried in absentia. The record[1] demonstrates plaintiff absented himself from the second day of trial, and we affirmed the trial judge's jury instruction on the flight charge. Ibid. Plaintiff served approximately five-and-a-half years for this conviction and was released in or around March 1996.
*1063 In April 1999, the New Jersey Office of the Attorney General (Attorney General) issued a report acknowledging the State Police's use of racial profiling on the Turnpike from 1988 to 1999. See State v. Herrerra, 211 N.J. 308, 324-28, 48 A.3d 1009 (2012) (detailing the history behind the investigation into the State Police's use of racial profiling) (citing Att'y Gen. N.J., Interim Report of the State Police Review Team Reagding Allegations of Racial Profiling 3-4 (1999)). Pursuant to this report, numerous criminal defendants raised allegations of racial profiling and sought discovery relating to that issue. Id. at 326. Our Supreme Court entered an Administrative Determination and Order, on January 31, 2000, to coordinate management of those cases. Ibid. Beginning in 2000, the Attorney General agreed to vacate convictions and dismiss charges for cases it identified. Id. at 327-28. According to plaintiff, his New Jersey conviction was not vacated at that time because it "fell through the cracks."
*46 In November 2011, plaintiff was convicted in the United States District Court for the Middle District of Pennsylvania for another narcotics offense. Plaintiff was sentenced to thirty years, with five years of supervised release. Notably, the court found plaintiff's 1988 convictions in New Jersey and Pennsylvania enhanced his federal sentence because he qualified as a three-strike "career offender" under federal sentencing guidelines.
On May 2, 2014, the New Jersey court entered a consent order vacating defendant's 1988 New Jersey conviction because it was subject to inclusion in the aforementioned State Police racial profiling consent order. In light of the vacated conviction, on August 13, 2015, the United States District Court for the Middle District of Pennsylvania resentenced plaintiff to sixty-three to seventy-eight months as he no longer qualified as a "career offender."
Plaintiff filed a complaint alleging a violation of the Act in the Superior Court on April 27, 2016. The complaint was signed by counsel but not verified by plaintiff. Plaintiff sought damages for time spent incarcerated on the vacated 1988 New Jersey conviction as well as the enhanced time he served in Pennsylvania.
The Treasury moved to dismiss plaintiff's complaint for failure to state a claim, Rule 4:6-2(e), and plaintiff opposed the Treasury's motion and cross-moved to amend the complaint to include his verification.
The trial judge granted the Treasury's motion for three reasons: (1) the Act barred plaintiff's claim because he did not institute the action within two years of being released from imprisonment on his 1988 New Jersey conviction; (2) plaintiff's complaint was not timely submitted as a verified complaint; and (3) plaintiff could not recover for the enhanced time served in Pennsylvania because the Act does not allow for such a cause of action. This appeal followed.
On appeal, plaintiff argues, among other things, the trial judge erred in finding his complaint was time-barred because the two- *47 year limitation period should begin to run when his 1988 New Jersey conviction was vacated. We disagree.
We review an order granting a motion to dismiss de novo. Castello v. Wohler, 446 N.J. Super. 1, 14, 139 A.3d 1218 (App. Div.), certif. denied, 228 N.J. 39, 154 A.3d 677 (2016) (citation omitted). A motion to dismiss for failure to state a claim must be denied if, giving plaintiff the benefit of all his allegations and all favorable inferences, a claim has been made out. R. 4:6-2(e); Burg v. State, 147 N.J. Super. 316, 319-20, 371 A.2d 308 (App. Div. 1977).
*1064 The inquiry is limited to examining the legal sufficiency of the facts alleged on the face of the complaint. Printing Mart-Morristown v. Sharp Electronics Corp., 116 N.J. 739, 746, 563 A.2d 31 (1989). The reviewing court must search the complaint "in depth and with liberality" to see whether the basis for a claim may be found even in an obscure statement. Ibid. (quoting Di Cristofaro v. Laurel Grove Memorial Park, 43 N.J. Super. 244, 252, 128 A.2d 281 (App. Div. 1957) ).
At the outset, we address the trial court's determination regarding the timeliness of plaintiff's complaint and the trial court's interpretation of the Act, N.J.S.A. 52:4C-4. When interpreting a statute, our "overriding goal is to give effect to the Legislature's intent." State v. D.A., 191 N.J. 158, 164, 923 A.2d 217 (2007) (citing DiProspero v. Penn, 183 N.J. 477, 492, 874 A.2d 1039 (2005) ). The best indicator of that intent is "the plain [statutory] language chosen by the Legislature." State v. Perry, 439 N.J. Super. 514, 523, 110 A.3d 122 (App. Div.), certif. denied, 222 N.J. 306, 118 A. 3d 348 (2015) (citing State v. Gandhi, 201 N.J. 161, 176, 989 A.2d 256 (2010) ). We thus read the text of a statute in accordance with its ordinary meaning unless otherwise specified. Ibid.; see also N.J.S.A. 1:1-1 (explaining "words and phrases [in statutes] shall be read and construed with their context, and shall, unless inconsistent with the manifest intent of the legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language.").
*48 In cases where a plain reading of the statute "leads to a clear and unambiguous result, then the interpretive process should end, without resort to extrinsic sources." D.A., 191 N.J. at 164, 923 A.2d 217 (citation omitted). If, however, the plain language of the statute is ambiguous, we may turn to extrinsic evidence to determine the Legislature's intent in enacting the statute. Ibid. Such extrinsic evidence is also necessary if a plain reading of a statute renders an absurd result at odds with the Legislature's intent. Ibid. (citing DiProspero, 183 N.J. at 492, 874 A.2d 1039 ); State v. Williams, 218 N.J. 576, 586, 95 A.3d 721 (2014) (citation omitted). Such extrinsic evidence includes "legislative history, committee reports, and contemporaneous construction." DiProspero, 183 N.J. at 492-93, 874 A.2d 1039 (quoting Cherry Hill Manor Assocs. v. Faugno, 182 N.J. 64, 75, 861 A.2d 123 (2004) ). Such evidence aids us in elucidating the Legislature's intent. However, we may not "rewrite a statute or add language that the Legislature omitted." State v. Munafo, 222 N.J. 480, 488, 120 A.3d 170 (2015) (citations omitted).
"[T]he Act is remedial legislation intended to facilitate the claims of innocent persons who have been wrongly convicted of crimes and subsequently imprisoned by according them remedies over and above those already existing[.]" Mills v. State, 435 N.J. Super. 69, 77, 86 A.3d 741 (App. Div. 2014). A claimant is required to prove, by clear and convincing evidence, each of the following elements in order to recover damages under N.J.S.A. 52:4C-5 :
a. That he was convicted of a crime and subsequently sentenced to a term of imprisonment, served all or any part of his sentence; and
b. He did not commit the crime for which he was convicted; and
c. He did not by his own conduct cause or bring about his conviction.
d. He did not plead guilty to the crime for which he was convicted.
[ Mills, 435 N.J. Super. at 79, 86 A.3d 741 ; N.J.S.A. 52:4C-3.]
*1065 However, "the Act is, in part, a waiver of state sovereign immunity," and thus is not without limits. Mills, 435 N.J. Super. at 77, 86 A.3d 741 ; Kamienski v. State, 451 N.J. Super. 499, 507-09, 169 A.3d 493 (App. Div. 2017) (explaining the Act is both remedial legislation and a waiver of sovereign immunity and must be *49 construed accordingly.). To this end, the Act, in pertinent part, requires that:
[t]he suit, accompanied by a statement of the facts concerning the claim for damages, verified in the manner provided for the verification of complaints in civil actions, shall be brought by the claimant within a period of two years after his release from imprisonment, or after the grant of a pardon to him.
[ N.J.S.A. 52:4C-4 (emphasis added).]
Here, the plain language is clear and unambiguous. The statute identifies two triggering events from which to calculate the two-year statute of limitations: release from imprisonment or a pardon. What is apparent is that the Legislature considered pardon to be a separate and independent triggering event. The Legislature did not include, as a triggering event, reversals or vacatur of convictions subsequent to a criminal defendant's release from imprisonment. The legal consequences of each are not always equivalent. In New Jersey, a pardon is a constitutional power bestowed solely upon the Governor. N.J. Const. art. V, § 2, ¶ 1 states: "The Governor may grant pardons and reprieves in all cases other than impeachment and treason[.]" Vacatur or reversal of a conviction is a judicial power.
According to plaintiff, he was released from prison in or around March 1996 for his 1988 New Jersey conviction, which was subsequently vacated, on May 2, 2014, upon the State's concession that it may have been tainted by racial profiling. Plaintiff filed this instant complaint on April 27, 2016. Since plaintiff was not pardoned and did not file this action within two years of release from imprisonment, the trial court applied the Act as written and did not err in granting the Treasury's motion to dismiss.
As we are satisfied with the trial judge's legal conclusion regarding the untimeliness of plaintiff's complaint, we need not reach plaintiff's additional arguments.
Affirmed.

During the pendency of this appeal, the Treasury moved to supplement the record to include relevant portions of plaintiff's criminal trial record, which the panel granted.