**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1328-23

TAMAR HERMAN,

     Plaintiff-Respondent,

v.

IBTIHAJ MUHAMMAD,

     Defendant-Appellant,

and

SELAEDIN MAKSUT, COUNCIL
ON AMERICAN-ISLAMIC
RELATIONS, a/k/a CAIR, a/k/a
CAIR FOUNDATION INC., and
CAIR NEW JERSEY, a/k/a
CAIR NJ, a/k/a CAIR NJ INC.,

     Defendants.

_____

Submitted September 10, 2024 – Decided October 15, 2024

Before Judges Sumners, Susswein and Bergman.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Union County, Docket No. L-2913-22.

Trenk Isabel Siddiqi & Shahdanian, PC, and CAIR Legal Defense Fund, attorneys for appellant (Assad K. Siddiqi and Justin Sadowsky (CAIR Legal Defense Fund) of the District of Colombia bar, admitted pro hac vice, on the briefs).

Edward Andrew Paltzik (Bochner PLLC) and Erik Dykema (Bochner PLLC), attorneys for respondent.

PER CURIAM

On motion for leave granted, defendant Ibtihaj Muhammad appeals the Law Division's denial of her Rule 4:6-2(e) motion to dismiss plaintiff Tamar Herman's amended complaint alleging defamation per se and false light invasion of privacy. We affirm.[1]

I.

The following facts are alleged in the amended complaint. Herman is a second-grade teacher at an elementary school (school) in the South Orange-Maplewood school district. On October 6, 2021, Herman believed that one of her students, who normally wears a form-fitting hijab as part of her Muslim

---

[1] In a separate opinion, we reversed the Law Division's denial of Rule 4:6-2(e)'s motion to dismiss by defendants Counsel on American Islamic Relations (CAIR) Foundation, CAIR-NJ, and CAIR-NJ's executive director Selaedin Maksut (collectively CAIR defendants). See Tamar Herman v. Ibtihaj Muhammad, No. A-0784-23 (App. Div. October 15, 2024).

faith, was wearing a "hood" covering her eyes. Attempting to reengage the student in schoolwork, Herman asked the student to remove the hood from her eyesight. Unbeknownst that the student was wearing a loose-fitting hijab, Herman "lightly brush[ed] back" the student's hijab and "immediately and gently brushed [it] back to cover . . . the [s]tudent's hair." Herman claims that "out of respect for the religious practices of Islam and for the [s]tudent's observation of same, [she] apologized to the [s]tudent." Herman maintains the hijab "never left the [s]tudent's head," and class resumed without disruption. After the student told her mother about the incident, the mother spoke to the school's principal and assistant principal.

The next day at 4:00 p.m., Muhammad, a practicing Muslim who wore a hijab while winning a Sabre fencing medal for the United States in the Olympics, posted the following sentiments on Instagram:

> I wrote this book [The Proudest Blue: A Story of Hijab and Family] with the intention that moments like this would never happen again. When will it stop? Yesterday, Tamar Herman, a teacher at Seth Boyden Elementary School in Maplewood, NJ forcibly removed the hijab of a second[-]grade student. The young student resisted, by trying to hold onto her hijab, but the teacher pulled the hijab off, exposing her hair to the class. Herman told the student that her hair was beautiful and she did not have to wear [a] hijab to school anymore. Imagine being a child and stripped of your clothing in front of your classmates. Imagine the humiliation and trauma this experience has caused her.

A-1328-23

This is abuse.  Schools should be a haven for all of our kids to feel safe, welcome and protected — no matter their faith.  We cannot move toward a post-racial America until we weed out the racism and bigotry that still exist in all layers of our society.  By protecting Muslim girls who wear hijab, we are protecting the rights of all of us to have a choice in the way we dress.

Writing books and posting on social is not enough.  We must stand together and vehemently denounce discrimination in all of its forms.  CALL Seth Boyden Elementary (973) 378-5209 and EMAIL the principal sglander@somsd.k12.Nj.us  and  the  superintendent Rtaylor@somsd.k12.Nj.us

About thirty minutes later, Muhammad edited and reshared the post on Instagram and Facebook.[2]  The edited post omitted the first two sentences ("I wrote this book with the intention that moments like this would never happen again.  When will it stop?") and included a photo of the school.  Muhammad's posts garnered considerable reactions in mass media and social media, including by the Counsel on American Islamic Relations (CAIR) Foundation, CAIR-NJ, and  CAIR-NJ's  executive  director  Selaedin  Maksut  (collectively  CAIR defendants), calling for Herman's immediate termination.

Prior  to  the  incident,  Herman  contends  she  had  a  "[l]ongstanding [p]ersonal [r]elationship with Muhammad."  They often worked out together in

_____

[2]  The original post, which included a photo and statement about Muhammad's then-recently published book, has since been removed from Instagram but remains on Facebook.

4

"small training group[s]," "shared the same personal trainer," and Herman attended Muhammad's 2018 book signing. After discussing the possibility of Muhmmad coming to speak at the school, which Muhammad also attended, the two exchanged phone numbers, "and Muhammad [gave] Herman her email address."

Just under a year after the incident, Herman filed a Law Division complaint against Muhammad and CAIR defendants, asserting claims for defamation and false light invasion of privacy. The complaint was amended after Muhammad and CAIR defendants withdrew their respective Rule 4:6-2(e) motions to dismiss for failure to state a claim without prejudice.

To address concerns raised by the motions to dismiss, Herman amended her complaint, adding allegations to support her claim that Muhammad's social media posts were malicious. Herman alleged Muhammad "did not investigate whether the allegations in her posts were true or false, or even make a good faith effort to determine whether the allegations were true." Herman asserted Muhammad posted an "unbelievable" version of the incident "based on the third-hand account of a dubious witness (the [s]tudent, a [seven-year-old] second-grader)." After the incident, Herman asserted the student's mother called Muhammad's mother, who then relayed the version of the incident that Muhammad posted. Herman emphasizes Muhammad's allegations "grossly

5

distorted . . . [her] gentle and momentary light brushing back of the [s]tudent's [hijab]." Furthermore, it is alleged that Muhammad's removal of the initial Instagram post evidences her "reckless disregard for the truth of her statements."

Based on their prior relationship, Herman texted Muhammad the next evening after her postings, explaining the information in Muhammad's posts was false. However, according to Herman, "Muhammad made no effort to verify the truth." Instead, she "admitted that she was relying on the recall of a [seven]-year-old," who was coached by her mother in a now-deleted video.

As a result of Muhammad's "defamatory social media posts . . . the Essex County Prosecutor's Office opened a [three-month] criminal investigation" of the incident, and though "vindicated by the outcome," Herman alleges she has endured "acute emotional distress," destruction of her "hard-earned reputation," and physical threats. Herman also alleged she was even "condemn[ed]" by the "rabbi from her childhood congregation."

## II.

After Herman amended her complaint, Muhammad filed a motion seeking dismissal of the complaint without citing the relevant court rule. Yet, Muhammad's supporting brief cited both Rules 4:6-2(e) and 4:46-2 and included three supporting certifications—two by Muhammad and one by Garner-

Muhammad. Herman responded with a counter statement of material facts and her own certification.

The motion court treated Muhammad's motion as one for summary judgment as both parties raised facts outside the pleadings through certifications and it would be "ill-placed 'and/or' [] procedurally deficient" to consider her motion under Rules 4:6-2(e) and 4:46-2. The court denied the motion because, under Rule 4:46-2, there was a genuine issue of material fact as to whether Muhammad published the allegedly defamatory statements with actual malice. The court determined that in accordance with Rule 4:46-3, discovery was necessary to determine whether Muhammad's state of mind in publishing her social media posts was defamatory. Citing New York Times Co. v. Sullivan, 376 U.S. 254 (1964), the court recognized that summary judgment was not a proper way to dispose of a defamation action. The court held Herman should not have "to prove her entire case at the pleading stage without any discovery on the disputed factual issues."

The court also viewed the motion as a Rule 4:6-2(e) motion to dismiss for failure to state a claim. The court determined a motion to dismiss was without merit because Herman's amended complaint pled detailed facts evincing Muhammad's actual malice in making her posts. The court found Muhammad

"knew or had serious doubts about the veracity of the alleged defamatory statements" she made.

## III.

Muhammad does not appeal the motion court's summary judgment ruling. Instead, she limits her appeal to the denial of her Rule 4:6-2(e) motion to dismiss for a failure to state a claim.

## A.

Our review of a trial court's ruling on a motion to dismiss is de novo. Watson v. N.J. Dep't of Treasury, 453 N.J. Super. 42, 47 (App. Div. 2017) (citing Castello v. Wohler, 446 N.J. Super. 1, 14 (App. Div. 2016)). Since our "review is plenary[,] . . . we owe no deference to the trial judge's conclusions." State v. Cherry Hill Mitsubishi, 439 N.J. Super. 462, 467 (App. Div. 2015) (citation omitted). In considering a motion under Rule 4:6-2(e), courts must accept the facts asserted in the complaint and should accord the plaintiff all favorable inferences. Watson, 453 N.J. Super. at 47.

"A complaint should be dismissed for failure to state a claim pursuant to Rule 4:6-2(e) only if the factual allegations are palpably insufficient to support a claim upon which relief can be granted." Frederick v. Smith, 416 N.J. Super. 594, 597 (App. Div. 2010) (internal quotations and citation omitted). "[O]ur inquiry is limited to examining the legal sufficiency of the facts alleged on the

face of the complaint." Green v. Morgan Props., 215 N.J. 431, 451 (2013) (internal quotations and citation omitted). Therefore, the pleading must be "search[ed] . . . in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim." Id. at 452 (internal quotations and citation omitted).

B.

Muhammad argues the motion court erred in finding Herman's allegations were sufficient to support a defamation and false light invasion of property claim. She contends: (1) her statements were "either protected opinion or substantially true"; and (2) if not, according to Neuwirth v. Murphy, 476 N.J. Super. 377, 391-92 (App. Div.), certif. denied, 255 N.J. 444 (2023), Herman failed to allege sufficient facts demonstrating actual malice. We address these contentions in turn.

To establish a prima facie case of defamation, there must be "(1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting at least to negligence by the publisher." DeAngelis v. Hill, 180 N.J. 1, 12-13 (2004). "A defamatory statement, generally, is one that subjects an individual to contempt or ridicule, one that harms a person's reputation by lowering the community's estimation of him or by deterring others from wanting

to associate or deal with him." Durando v. Nutley Sun, 209 N.J. 235, 248-49 (2012) (quoting G.D. v. Kenny, 205 N.J. 275, 293 (2011)).

Only the first and third elements are in dispute here. Under the first element, truth may be asserted as a defense to a defamation action "even when a statement is not perfectly accurate." G.D., 205 N.J. at 293. "The law of defamation 'overlooks minor inaccuracies and concentrates upon substantial truth.'" Read v. Profeta, 397 F. Supp. 3d 597, 651 (D.N.J. 2019) (quoting Masson v. New Yorker Mag., Inc., 501 U.S. 496, 516 (1991)); see also G.D., 205 N.J. at 294. A defendant's statements of opinion about a plaintiff, rather than of fact, are not actionable defamation. "Statements of opinion, like unverifiable statements of fact, generally cannot be proved true or false," but such a statement is not protected where it implies false underlying facts. Lynch v. N.J. Educ. Ass'n, 161 N.J. 152, 167 (1999); see also Ward v. Zelikovsky, 136 N.J. 516, 533 (1994) ("an accusation of bigotry is not actionable unless the statement suggests the existence of defamatory facts").

The third element requires a showing of "actual malice" by the defendant where the statement is about a plaintiff who is a public figure or relates to an issue of public concern. See Senna v. Florimont, 196 N.J. 469, 495 (2008) (recognizing that "news stories about those subjects involve the public interest and deserve heightened protection"). There is no dispute that the actual malice

standard applies here because Herman's conduct arose in the context of her teaching in a public school.  See Rocci v. Ecole Secondaire Macdonald-Cartier, 165 N.J. 149, 160 (2000) (allegedly defamatory statements concerning "the welfare of [a child] entrusted to the care of a teacher," which "involved a matter of public concern.").

"To satisfy the actual-malice standard, a plaintiff must show by clear and convincing evidence that the publisher either knew that the statement was false or published with reckless disregard for the truth."  Lynch, 161 N.J. at 165.  This can be accomplished by proof that "the publisher fabricates a story, publishes one that is wholly unbelievable, or relies on an informant of dubious veracity . . . or purposely avoids the truth."  Neuwirth, 476 N.J. Super. at 392 (quoting Lynch, 161 N.J. at 165-66) (internal citations omitted).  "Mere failure to investigate all sources [of information to be published] does not prove actual malice."  Lynch, 161 N.J. at 172 (citing Costello v. Ocean Cnty. Observer, 136 N.J. 594. 615 (1994)).  "The actual-malice standard is a subjective standard that does not involve consideration of whether a reasonable person would have, or should have, known the statement was false but rather whether 'the defendant in fact entertained serious doubts as to the truth of his publication.'"  Neuwirth, 476 N.J. Super. at 392 (quoting St. Amant v. Thompson, 390 U.S. 727, 731 (1968)).

11

A defendant commits false-light invasion of privacy by

> giv[ing] publicity to a matter concerning another that places the other before the public in a false light [if]
>
> . . . .
>
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
>
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.
>
> [Romaine v. Kallinger, 109 N.J. 282, 294 (1988) (quoting Restatement, (Second) of Torts, § 652E); accord Durando, 209 N.J. at 249.]

Simply put, false light invasion of privacy is "essentially [a claim] of defamation." Swan v. Boardwalk Regency Corp., 407 N.J. Super. 108, 121 (App. Div. 2009).

### C.

We conclude plaintiff alleged a prima facie case of defamation and false-light invasion of privacy against Muhammad based on certain statements Muhammad posted on social media. This is not to say Herman's allegations can be sustained at later stages of this litigation. But, for now, considering the law governing defamation claims and affording Herman all favorable factual inferences, we agree with the motion court her amended complaint should not have been dismissed under Rule 4:6-2(e).

Upon our de novo review of the motion, we first examine the following allegations in the amended complaint. Muhammad posted that Herman: "[F]orcibly removed the hijab of a second[-]grade student. The young student resisted, by trying to hold onto her hijab, but the teacher pulled the hijab off, exposing her hair to the class." Muhammad contends "forcibly" constitutes "protected opinion" and that the trial court and Herman conflated with term "forcefully." Muhammad maintains her assertion that Herman's removal of the student's hijab was "done with force . . . [and] against [the student's] will," constitutes her opinion. Because Herman denies its veracity, Muhammad's statement cannot be substantial truth or opinion. Moreover, the imagery of forcibly removing the hijab against the student's will portrays Herman in a bad light by suggesting she aggressively used force to remove the student's hijab despite knowing its religious significance and the student's objection.

Muhammad posted that Herman told the student "her hair was beautiful and she did not have to wear a hijab to school anymore." There is no substantial truth to this statement based on Herman's denial that she said this. Considering the student was practicing her Islamic faith by wearing the hijab, the statement was defamatory because it accused Herman, a public school teacher, of not respecting the student's religious beliefs. Such assertion by Herman, if true, was not a minor inaccuracy.

13

Muhammad posted that Herman "stripped [the student's] clothing in front of [her] classmates."  Again, because Herman denies removing the hijab, there is no substantial truth supporting Muhammad's contention that this post is protected opinion.

We agree with the trial court's determination that Herman's amended complaint sufficiently alleges Muhammad's posts were done with actual malice. The court did not, as Muhammad contends, misconstrue our recent decision in Neuwirth.  Muhammad argues that under Neuwirth, Herman failed to show she "in fact entertained serious doubts as to the truth of [her] publication," thereby failing to allege her posts were made with actual malice.  476 N.J. Super. at 392. She asserts there is no factual basis supporting Herman's assertion of actual malice because she had subjective doubts about what her mother told her about the incident.

In Neuwirth, we reversed the trial court's order denying the defendants' Rule 4:6-2(e) motion to dismiss the plaintiff's defamation count in his fourth amended complaint.  476 N.J. Super at 381.  After the plaintiff was terminated as Assistant Commissioner for the Department of Health, he filed a multi-count complaint, including a defamation claim asserting "[t]he State, through anonymous sources, and Governor Murphy, made false and defamatory statements, knowing them not to be true, to the news media and the entire public

14

of New Jersey during public Coronavirus Press Briefings." Id. at 387. He asserted Governor Murphy "made his comments about [p]laintiff recklessly and/or with actual knowledge of their falsity and to punish and further retaliate against [p]laintiff for engaging in whistleblowing activity concerning high ranking officials of his administration, which is further evidence of the maliciousness of his actions." Id. at 389. We concluded the plaintiff's "[r]epeated, conclusory allegations that Governor Murphy was 'aware' of the truth and made the statements 'recklessly and/or with actual knowledge of their falsity' are mere recitations of the applicable legal standard, not factual assertions." Id. at 393. We added further that "allegations regarding Governor Murphy's failure to conduct an investigation between plaintiff's . . . termination and the [next day's] press briefing are similarly unavailing." Ibid. We thus dismissed the defamation claim because the plaintiff failed to adequately plead actual malice. Id. at 394.

Unlike the situation in Neuwirth, we conclude Herman adequately plead facts which, if true, could constitute actual malice. Herman asserted that based on their prior relationship, she exchanged several text messages with Muhammad the next evening and two days after the postings, explaining the information in her posts was false. However, according to Herman, "Muhammad made no effort to verify the truth of these accusations because she

15

<u>did not care whether the allegations were true or false</u>, because making them would generate publicity for her." Herman stresses that Muhammad "admitted that she was relying on the recall of a [seven]-year-old," who was coached by her mother in a now-deleted video. Herman also alleges that "almost one month after the initial posts — Muhammad referred to the teacher-student interaction as the 'alleged incident,'" thereby, indicating Muhammad knew she "committed libel against Herman and was (unsuccessfully) attempting to buffer herself against" her prior statements. Herman's <u>allegations</u> of actual malice were not merely conclusory. Nor did she perfunctorily parrot the legal test. Rather, she detailed facts questioning whether Muhammad knew or had serious doubts about the veracity of the student's reports of the incident as relayed to the student's mother and Muhammad's mother. And while Muhammad's communications with Herman occurred after the posts, the amended complaint's allegation that Muhammad did not modify her accusations against Herman can be viewed as evidence of her subjective intent in her posts. Furthermore, the amended complaint's allegation that Muhammad later referred to the incident as "alleged" can be viewed as expressing serious doubts about her posts.

We, however, do not agree with the trial court and Herman that Muhammad had a duty to investigate the incident by speaking to the student, her mother, or Herman prior to making her posts. <u>See</u> <u>Lynch</u>, 161 N.J. at 172. In

addition, we disagree with the court and Herman that Muhammad acted with malice because the incident is "wholly unbelievable" and she relied on a "third-hand account of a dubious witness," a seven-year-old student. There is nothing in the amended complaint suggesting the student's allegations were dubious merely because of her youth. We further find that allegations of antisemitism shed no light at this stage of the litigation in resolving a motion to dismiss.

In conclusion, our ruling should not be construed as an expression of our views regarding the merits of Herman's claims. Our decision affirming the denial of Muhammad's <u>Rule</u> 4:6-2(e) motion is based strictly on the pleadings and our interpretation of the law.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION