**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0784-23

TAMAR HERMAN,

     Plaintiff-Respondent,

v.

IBTIHAJ MUHAMMAD,

     Defendant,

and

SELAEDIN MAKSUT, COUNCIL
ON AMERICAN-ISLAMIC
RELATIONS, a/k/a CAIR, a/k/a
CAIR FOUNDATION INC., and
CAIR NEW JERSEY, a/k/a
CAIR NJ, a/k/a CAIR NJ INC.,

     Defendants-Appellants.

_____

          Argued September 10, 2024 – Decided October 15, 2024

          Before Judges Sumners, Susswein and Bergman.

          On appeal from an interlocutory order of the Superior
          Court of New Jersey, Law Division, Union County,
          Docket No. L-2913-22.

Abigail B. Everdell (Davis Wright Tremaine, LLP) of the New York Bar, admitted pro hac vice, and Jorkeell Echeverria argued the cause for CAIR Foundation Inc., CAIR New Jersey, and Selaedin Maksut (Robert Balin (Davis Wright Tremaine, LLP), Abigail B. Everdell, and Pashman Stein Walder Hayden, PC, attorneys for CAIR Foundation Inc.; Carlton Fields, PA, attorneys for CAIR New Jersey and Selaedin Maksut; Robert Balin, Abigail B. Everdell, Bruce S. Rosen, Michael T. Hensley, Jorkeell Echeverria, and Lauren Fenton-Valdivia, on the briefs).

Erik Dykema (Bochner PLLC) argued the cause for respondent (Edward Andrew Paltzik (Bochner PLLC) and Erik Dykema, attorneys; Edward Andrew Paltzik and Erik Dykema, on the brief).

PER CURIAM

On motion for leave granted, defendants Counsel on American Islamic Relations (CAIR) Foundation, CAIR-NJ, and CAIR-NJ's executive director, Selaedin Maksut, appeal the Law Division's denial of their Rule 4:6-2(e) motion to dismiss plaintiff Tamar Herman's amended complaint alleging defamation per se and false light invasion of privacy. We reverse.[1]

I.

---

[1] In a separate opinion, we affirmed the Law Division's denial of defendant Ibtihaj Muhammad's Rule 4:6-2(e)'s motion to dismiss. See Tamar Herman v. Ibtihaj Muhammad, No. A-1328-23 (App. Div. October 15, 2024).

A-0784-23

The following facts are alleged in the amended complaint. Herman is a second-grade teacher at an elementary school (school) in the South Orange-Maplewood school district. On October 6, 2021, Herman believed that one of her students, who normally wears a form-fitting hijab as part of her Muslim faith, was wearing a "hood" covering her eyes. Attempting to reengage the student in schoolwork, Herman asked the student to remove the hood from her eyesight. Unbeknownst that the student was wearing a loose-fitting hijab, Herman "lightly brush[ed] back" the student's hijab and "immediately and gently brushed [it] back to cover . . . the [s]tudent's hair." Herman claims that "out of respect for the religious practices of Islam and for the [s]tudent's observation of same, [she] apologized to the [s]tudent." Herman maintains the hijab "never left the [s]tudent's head," and class resumed without disruption. After the student told her mother about the incident, the mother spoke to the school's principal and assistant principal.

The next day at 4:00 p.m., defendant Ibtihaj Muhammad, a practicing Muslim who wore a hijab while winning a Sabre fencing medal for the United States in the Olympics, posted the following sentiments on Instagram:

> I wrote this book [The Proudest Blue: A Story of Hijab and Family] with the intention that moments like this would never happen again. When will it stop? Yesterday, Tamar Herman, a teacher at Seth Boyden

3

Elementary [School] in Maplewood, NJ forcibly removed the hijab of a second[-]grade student. The young student resisted, by trying to hold onto her hijab, but the teacher pulled the hijab off, exposing her hair to the class. Herman told the student that her hair was beautiful and she did not have to wear [a] hijab to school anymore. Imagine being a child and stripped of your clothing in front of your classmates. Imagine the humiliation and trauma this experience has caused her. This is abuse. Schools should be a haven for all of our kids to feel safe, welcome and protected — no matter their faith. We cannot move toward a post-racial America until we weed out the racism and bigotry that still exist in all layers of our society. By protecting Muslim girls who wear hijab, we are protecting the rights of all of us to have a choice in the way we dress.

Writing books and posting on social is not enough. We must stand together and vehemently denounce discrimination in all of its forms. CALL Seth Boyden Elementary (973) 378-5209 and EMAIL the principal sglander@somsd.k12.Nj.us and the superintendent Rtaylor@somsd.k12.Nj.us

About thirty minutes later, Muhammad edited and reshared the post on Instagram and Facebook.[2] The edited post omitted the first two sentences ("I wrote this book with the intention that moments like this would never happen again. When will it stop?") and included a photo of the school. Muhammad's

---

[2] The original post, which included a photo and statement about Muhammad's then-recently published book, has since been removed from Instagram but remains on Facebook.

A-0784-23

posts garnered considerable reactions in mass media and social media, including from CAIR and CAIR-NJ, "a nonprofit organization that focuses on Muslim civil rights and advocacy," and Maksut, calling for Herman's immediate termination.

On October 8, the day after Muhammad's posts, Maksut, "having seen Muhammad's social media posts (like thousands of other people)," made the following statements[3]:

- [A]t 12:41 a.m. Eastern Time, [he tweeted:] "[a]bsolutely unacceptable. Teacher pulls off 7[-]year old's hijab . . . in front of the class. Our @CAIRNJ office is calling for immediate termination. Racist teachers like this cannot be trusted around our children.

- [A]t 7:34 a.m. Eastern Time, ABC's television show "Good Morning America" broadcasted a report entitled "Calls To Fire Teacher Accused Of Pulling Of Student's Hijab." . . . During . . . an interview with Maskut. . . .[,] Muskat stated: "The hijab, you know, is much like any other article of clothing for a Muslim woman. To remove that publicly can be very humiliating." Later in the [interview] . . . Maskut stated: "Anyone who thinks it's OK to do this to a student clearly is not fit to be a teacher." [(Empasis omitted).]

---

[3] The amended complaint includes links to the posts and media reports, which we need not include in this opinion.

- At approximately 2:13 p.m.[,] . . . Maksut posted, and later deleted, the following reply to his original Twitter post: "Call and email the Superintendent, Dr. Ronald G. Taylor, today, and let him know Tamar Wyner Herman is unfit to be a teacher.

Maksut's statements were also aired on area radio stations. CBS News New York quoted Muskat stating: "The teacher not only put her hands on her, removed her headscarf. And this is, of course, humiliating for any Muslim woman to be exposed this way, in public." WCBS NEWSRADIO 880 reported that Maksut stated: "Clearly [Herman has] demonstrated she cannot be trusted around students."

Also on October 8, CAIR shared a link to an NBC-New York television segment, "NJ Teacher Accused of Pulling Hijab Off 2nd Grade Student's Head," on its Facebook and Twitter accounts, along with the following message: "A teacher pulled off a 7-year-old student's hijab in front of her class. This is completely unacceptable, and we are calling for immediate termination. Our children are not safe with #Islamophobia in the classroom." The press release reiterates Muhammad's version of the incident and includes an earlier quote from Maksut. CAIR later tweeted: "CAIR-NJ Exec. Dir. Selaedin Maksut: 'Forcefully stripping off the religious headscarf of a Muslim girl is not only exceptionally disrespectful behavior, but also a humiliating and traumatic

6

experience.' @CAIRNJ @Mselaedin #Islamophobia." Around the same time, CAIR-NJ made three identical tweets and several Facebook posts, echoing Maksut's earlier sentiments quoted in the CAIR Foundation's Press release.

CAIR also posted a press release on its website entitled "CAIR-NJ Calls for Immediate Firing of Teacher Who Allegedly Pulled Off Muslim Student's Hijab," which included the following quote from Maksut:

> We call for the immediate firing of the Maplewood teacher who pulled off the headscarf of a young Muslim student. Anything less is an insult to the students and parents of Maplewood, NJ. Forcefully stripping off the religious headscarf of a young Muslim girl is not only exceptionally disrespectful behavior, but also a humiliating and traumatic experience.
>
> Muslim students already deal with bullying from peers, it's unthinkable that teacher would add to their distress. Islamophobia in our public schools must be addressed in NJ. Classrooms are a place for students to feel safe and welcome, not fear practicing their faith.

On October 9, during a phone interview with the NBC's Today Show, Maksut stated: "Anything less than removing her from the classroom would be unacceptable. If she can't respect the religious practices of her students, then she shouldn't be teaching."

On October 9, CAIR posted a YouTube video clip of the Good Morning America report, which included the following quote from Maksut: "The hijab,

7

you know, is much like any other article of clothing for a Muslim woman. To remove that publicly can be very humiliating. . . . Anyone who thinks it's OK to do this to a student clearly is not fit to be a teacher."

Just under a year after the incident, Herman filed a Law Division complaint against defendants and Muhammad, asserting claims for defamation and false light invasion of privacy. The complaint was amended after Muhammad and defendants withdrew their respective Rule 4:6-2(e) motions to dismiss for failure to state a claim without prejudice. Defendants claimed Herman failed to plead facts establishing that their statements were made with actual malice—a required element of defamation and false light invasion of privacy.

To address concerns raised by the motions to dismiss, Herman amended her complaint, making allegations that defendants' statements were made with actual malice because Muhammad "did not investigate whether the allegations in her posts were true or false, or even make a good faith effort to determine whether the allegations were true."[4] She avowed Muhammad posted an

_____

[4] The record does not include the initial complaint or indicate what allegations were added in the amended complaint. As best we can determine from the briefs and the record, the allegations referenced in this and the next paragraph form the basis of Herman's actual malice claims.

"unbelievable" version of the incident "based on the third-hand account of a dubious witness (the [s]tudent, a [seven-year-old] second-grader)." Herman asserted that, after the incident, the student's mother called Muhammad's mother, who then relayed the version of the incident that Muhammad posted. Herman claimed Muhammad's allegations were "neither 'true' nor even 'substantially true.'" She alleges Muhammad "grossly distorted . . . [her] gentle and momentary light brushing back of the [s]tudent's [hijab]." Herman further alleged that Muhammad's removal of the initial Instagram post evinces her "reckless disregard for the truth of her statements."

As to defendants, Herman alleged they acted maliciously because "Maksut repeated Muhammad's allegations and expanded upon them without investigation or a good faith effort to determine whether the allegations were true or false, or to get the facts straight, because—like Muhammad—Maksut simply did not care at all whether the statements were true or not." She claimed "Maksut's exaggerated and inflammatory language substantially distorted and twisted what happened during the interaction between Herman and the [s]tudent, transforming Herman's caring actions into imagined abhorrent actions." She contended Maksut "knowingly, maliciously, and willfully published . . . without authorization or privilege." She asserted defendants' statements were "neither

true nor substantially true" but were "for the purpose of drumming up support and publicity, to achieve donations" with "reckless disregard for the fact that their likely false statements would harm Herman."  Herman claimed defendants never "attempted to contact Herman to learn what happened."  Herman concluded "these facts demonstrate actual malice on the part of . . . [defendants]."

## II.

After Herman amended her complaint, defendants, as well as Muhammad, renewed their Rule 4:6-2(e) motions to dismiss Herman's complaint, arguing she failed to plead facts showing their statements were made with actual malice.  In its statement of reasons, the motion court noted the motions as deficient under Rule 4:6-2(e) and considered them ones for summary judgment.  As to defendants, the court held their brief's statement of facts cited sources outside the pleadings in footnotes, warranting a summary judgment analysis.  Herman opposed the motions by also submitting a certification that raised facts outside the pleadings.  Nevertheless, applying Rule 4:6-2(e), the court determined that under Neuwirth v. Murphy, 476 N.J. Super. 377, 391-92 (App. Div.), certif. denied, 255 N.J. 444 (2023), dismissal was not appropriate because Herman's amended complaint specifically pled facts establishing that defendants'

defamatory and false light invasion of privacy statements were made with actual malice. The court held "[Herman] has presented detailed facts that call into question whether . . . Muhammad and thus . . . all [d]efendants, . . . knew or had serious doubts about the veracity of the alleged defamatory statements they made or circulated." The court's order denied CAIR defendants' Rule 4:6-2(e) motion, without reference to a summary judgment motion.

Days before seeking leave to appeal the denial of their motion to dismiss, defendants moved before the motion court to stay discovery. Before we granted leave to appeal, the motion court declined to stay discovery. In its statement of reasons, the court noted that although the motion was "procedurally deficient,"[5] it denied the motion on its merits based on the well settled standards set forth in Crowe v. DeGioia, 90 N.J. 126, 132-34 (1982). In determining defendants did not show a likelihood of success in reversing the denial of their motion to dismiss, the motion court "amended, clarified, supplemented or otherwise amplified" its denial that, under Neuwirth, Herman pled sufficient facts establishing actual malice.

---

[5] The motion court determined the motion's return date did not comply with Rule 1:6-3 (a), was not supported by a brief as required by Rule 1:6-5 and was premature because our court had not ruled on the motion for leave to appeal.

11

III.

A.

Our review of a trial court's ruling on a motion to dismiss is de novo. Watson v. N.J. Dep't of Treasury, 453 N.J. Super. 42, 47 (App. Div. 2017) (citing Castello v. Wohler, 446 N.J. Super. 1, 14 (App. Div. 2016)). Since our "review is plenary[,] . . . we owe no deference to the trial judge's conclusions." State v. Cherry Hill Mitsubishi, 439 N.J. Super. 462, 467 (App. Div. 2015) (citation omitted). In considering a motion under Rule 4:6-2(e), courts must accept the facts asserted in the complaint and should accord the plaintiff all favorable inferences. Watson, 453 N.J. Super. at 47.

"A complaint should be dismissed for failure to state a claim pursuant to Rule 4:6-2(e) only if the factual allegations are palpably insufficient to support a claim upon which relief can be granted." Frederick v. Smith, 416 N.J. Super. 594, 597 (App. Div. 2010) (internal quotations and citation omitted). "[O]ur inquiry is limited to examining the legal sufficiency of the facts alleged on the face of the complaint." Green v. Morgan Props., 215 N.J. 431, 451 (2013) (internal quotations and citation omitted). Therefore, the pleading must be "search[ed] . . . in depth and with liberality to ascertain whether the fundament

of a cause of action may be gleaned even from an obscure statement of claim." Id. at 452 (internal quotations and citation omitted).

B.

Defendants assert the motion court misapplied Rule 4:6-2(e) and Neuwirth, erroneously finding Herman sufficiently pled actual malice regarding their statements about Herman's incident with the student. They contend the court "conflated [Herman's] allegations about Muhammad's subjective knowledge of falsity with allegations about the CAIR [d]efendants' subjective knowledge of falsity." Defendants argue the court failed to establish their "subjective awareness" of the incident and only addressed Herman's allegations concerning Muhammad's mindset. Defendants also contend Herman failed to plead facts that they published statements about the incident knowing the statements were false, made with reckless disregard as to their truth, or had reason to doubt their truth. Finally, citing Neuwirth, defendants contend Herman's allegations that they failed to investigate or retract their statements do not demonstrate they acted with actual malice.

To establish a prima facie case of defamation, there must be: "(1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault

amounting at least to negligence by the publisher." DeAngelis v. Hill, 180 N.J. 1, 12-13 (2004). "A defamatory statement, generally, is one that subjects an individual to contempt or ridicule, one that harms a person's reputation by lowering the community's estimation of him or by deterring others from wanting to associate or deal with him." Durando v. Nutley Sun, 209 N.J. 235, 248-49 (2012) (quoting G.D. v. Kenny, 205 N.J. 275, 293 (2011)).

A defendant's statements of opinion about a plaintiff, rather than of fact, are not actionable defamation. "Statements of opinion, like unverifiable statements of fact, generally cannot be proved true or false," but such a statement is not protected where it implies false underlying facts. Lynch v. N.J. Educ. Ass'n, 161 N.J. 152, 167 (1999); see also Ward v. Zelikovsky, 136 N.J. 516, 533 (1994) ("an accusation of bigotry is not actionable unless the statement suggests the existence of defamatory facts").

The sole issue here is whether defendants' statements were made with "actual malice." There must be a showing of actual malice by a defendant where the statement is about a plaintiff who is a public figure or relates to an issue of public concern. See Senna v. Florimont, 196 N.J. 469, 495, 496 (2008) (recognizing that "news stories about those subjects involve the public interest and deserve heightened protection"). The actual malice standard applies here

14

because Herman's conduct arose in the context of her teaching in a public school. See Rocci v. Ecole Secondaire Macdonald-Cartier, 165 N.J. 149, 160 (2000) (alleged defamatory statements concerning "the welfare of [a child] entrusted to the care of a teacher," held to be "a matter of public concern.").

"To satisfy the actual-malice standard, a plaintiff must show by clear and convincing evidence that the publisher either knew that the statement was false or published with reckless disregard for the truth." Lynch, 161 N.J. at 165. "The [actual malice] test is subjective, not objective, and involves analyzing the thought processes of the particular defendant." Durando, 209 N.J. at 251. The test can be satisfied by proof that "the publisher fabricates a story, publishes one that is wholly unbelievable, or relies on an informant of dubious veracity . . . or purposely avoids the truth." Neuwirth, 476 N.J. Super. at 392 (quoting Lynch, 161 N.J. at 165-66) (internal citations omitted). "Mere failure to investigate all sources [of information to be published] does not prove actual malice." Lynch, 161 N.J. at 172 (citing Costello v. Ocean Cnty. Observer, 136 N.J. 594., 615 (1994). "The actual-malice standard is a subjective standard that does not involve consideration of whether a reasonable person would have, or should have, known the statement was false but rather whether 'the defendant in fact

entertained serious doubts as to the truth of his publication.'" Neuwirth, 476 N.J. Super. at 392 (quoting St. Amant v. Thompson, 390 U.S. 727, 731 (1968).

In Neuwirth, we reversed the trial court's order denying the defendants' Rule 4:6-2(e) motion to dismiss the plaintiff's defamation count in his fourth amended complaint. 476 N.J. Super at 381. After the plaintiff was terminated as Assistant Commissioner for the Department of Health, he filed a multi-count complaint, including a defamation claim asserting "[t]he State, through anonymous sources, and Governor Murphy, made false and defamatory statements, knowing them not to be true, to the news media and the entire public of New Jersey during public Coronavirus Press Briefings." Id. at 387. He asserted Governor Murphy "made his comments about [p]laintiff recklessly and/or with actual knowledge of their falsity and to punish and further retaliate against [p]laintiff for engaging in whistleblowing activity concerning high ranking officials of his administration, which is further evidence of the maliciousness of his actions." Id. at 389. We concluded the plaintiff's "[r]epeated, conclusory allegations that Governor Murphy was 'aware' of the truth and made the statements 'recklessly and/or with actual knowledge of their falsity' are mere recitations of the applicable legal standard, not factual assertions." Id. at 393. We added further that "allegations regarding Governor

16

Murphy's failure to conduct an investigation between plaintiff's . . . termination and the [next day's] press briefing are similarly unavailing." Ibid. We thus dismissed the defamation claim because the plaintiff failed to adequately plead actual malice. Id. at 394.

A defendant commits false-light invasion of privacy by

> giv[ing] publicity to a matter concerning another that places the other before the public in a false light [if]
>
> . . . .
>
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
>
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.
>
> [Romaine v. Kallinger, 109 N.J. 282, 294 (1988) (quoting Restatement (Second) of Torts, § 652E); accord Durando, 209 N.J. at 249.]

Simply put, false light invasion of privacy is "essentially [a claim] of defamation." Swan v. Boardwalk Regency Corp., 407 N.J. Super. 108, 121 (App. Div. 2009).

## C.

We conclude Herman's amended complaint did not sufficiently allege a prima facie case of defamation and false-light invasion of privacy because she

failed to assert facts that defendants' statements regarding Herman's interaction with the student were made with actual malice. We agree with defendants that Herman's amended complaint improperly conflates their alleged subjective knowledge of falsity with Muhammed's. Herman's allegations of defendants' actual malice are imputed from Muhammad's conduct and her subjective intent. Herman does not make factual allegations establishing that, prior to defendants publicizing their statements about the incident, defendants acted in concert with Muhammad or had any communication with Muhammad regarding the veracity of the student's allegations. Herman makes conclusory claims—with no factual support—that defendants knew the statements were false, were made with reckless disregard as to their truth, or they had reason to doubt their truth. Herman's allegations fail to address defendants' subjective intent in making their statements.

The mere fact that defendants advocate for Muslims' civil rights does not establish they knew Muhammad's social media posts were untrue yet still published defamatory statements or put Herman's privacy in a false light. Herman's amended complaint asserts that defendants' comments about the incident were based solely on Muhammad's social media posts. And as we held in Neuwirth, defendants had no duty to investigate Muhammad's posts. Thus,

18

Herman cannot sustain a charge of actual malice by contending defendants should have communicated with Muhammad, Herman, or the student's family before circulating and commenting on Muhammad's posts. Defendants never claimed they had first-hand knowledge of the incident. Accordingly, like the situation in Neuwirth, we conclude Herman failed to adequately plead facts showing defendants' statements were made with actual malice.

Finally, we reject Herman's request at oral argument that if we reverse the motion court, we order dismissal of her amended complaint without prejudice so that she can amend her complaint again with some guidance from us as to what facts must be alleged to establish actual malice. Herman amended her complaint after defendants' initial motion to dismiss was withdrawn without prejudice. Given that opportunity to comport with the legal principles governing defamation, she cites no legal or factual basis to afford her another opportunity to amend her complaint. Moreover, our guidance begins and ends with the case law governing defamation as discussed herein. Based on our conclusion that Herman has not established prima facie claims, we discern no reason to allow her another opportunity to amend her complaint to pursue claims against defendants.

A-0784-23

Reversed and remanded for an entry of an order dismissing Herman's complaint as to defendants.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0784-23